(38 South. 160.)

No. 15,289.

LA GROUE et ux. v. CITY OF NEW ORLEANS et al.*

(Feb. 13, 1905.)

APPEAL — JURISDICTION—AMOUNT IN CONTROVERSY—LIABILITY OF CITY—NEGLIGENCE OF CONTRACTOR—CREDIBILITY OF WITNESSES.

On Motion to Dismiss Appeal.

1. Where the wife sues for damages for personal injuries, and the husband joins in the ac-

*Rehearing denied March 13, 1905.

tion, claiming as damages medical and other expenses incurred by reason of the injuries to the wife, held, that the test of appellate jurisdiction is the sum total of both demands arising from the same cause of action.

On the Merits.

2. Where the city of New Orleans, through a board of commissioners, made a contract with an arboriculturist for the furnishing and planting of a large number of trees upon the neutral ground in St. Charles avenue, the city having no choice in the selection of workmen and no control over the manner of doing the work, and where the work of planting the trees did not necessarily constitute an obstruction or defect in the street, rendering it unsafe or dangerous for the purposes of public travel, held, that the city is not liable with the contractor for personal injuries occasioned by plaintiff falling at night into one of the holes carelessly left open by the contractor.

3. On the question of the credibility of witnesses and of the quantum of damages, the opinion of the trial judge, sitting without a jury, is entitled to great weight, and will not be disturbed unless clearly wrong or manifestly erroneous.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by Melville La Groue and wife against the city of New Orleans and another. Judgment for plaintiffs, and defendants appeal. Amended by rejecting the claim against the city of New Orleans, and affirmed as amended.

St. Clair Adams, Asst. City Atty., for appellant city of New Orleans. Edward Lewis Simonds, for appellant H. Papworth. Francis Rivers Richardson, for appellees.

LAND, J. Mrs. La Groue, in her own right and for her separate benefit, sued the defendants for $2,100 damages for personal injuries suffered by her, and alleged to have been occasioned by a fall into an unprotected hole in St. Charles avenue on the night of Mardi Gras (February 24, 1903). Her husband sued also in the same petition for $225, cost of medical services, medicines, nursing, etc., incurred by him in consequence of said injuries to his wife. The defendants are the city of New Orleans and Harry Papworth, a

gardener who, it is alleged, had a contract with the city to plant a number of trees along the neutral ground of said avenue. It is alleged that said Papworth, under his contract, dug the hole in question, which was several feet in depth, and that defendants were guilty of gross carelessness in permitting the same to remain open, exposed, and without covering or light to indicate the danger, particularly on the night of a large parade, when they knew that crowds of spectators would be standing in said avenue. Plaintiffs alleged that the existence of said hole was unknown to them, and that it was not visible in the crowd and darkness. The petition alleged that Mrs. La Groue, as the result of the fall into said hole, suffered great pain and internal injuries, producing convulsions, and necessitating her removal to the Touro Infirmary, where she was treated, and that she was confined to her bed for nearly seven weeks.

Defendant Papworth, for answer, pleaded the general issue. The city of New Orleans, after pleading a general denial, further answered that by ordinance the neutral ground on St. Charles avenue was in charge of a board of commissioners; that said board on February 12, 1903, entered into a written contract with Harry Papworth, by which the latter was to furnish and plant 300 trees upon said neutral ground; that, if plaintiff met with the accident and suffered the injuries as alleged, respondent city was not responsible, for the reason that Papworth was an independent contractor, as fully shown by a copy of the contract annexed to the answer; and that plaintiff contributed to the accident.

The case was tried before the district judge without the intervention of a jury, and judgment was rendered against defendants in solido for $225 in favor of Melville La Groue, and for $300 in favor of his wife. Both defendants appealed.

Mrs. La Groue, for answer to the appeal, prayed that the judgment in her favor be amended by increasing the amount to $2,100.

Melville La Groue has moved to dismiss the appeal, as far as he is concerned, on the ground that this court is without jurisdiction ratione materiæ.

## Motion to Dismiss.

The demand of Melville La Groue is for $225, founded, however, on the same cause of action as the demand of his wife for $2,100, which, under Act 68, p. 95, of 1902, is her separate, individual property. In Bowman et al. v. City of New Orleans, 27 La. Ann. 501, the court held that where several plaintiffs united in one suit, for convenience and economy, against the city of New Orleans, for damages arising from one and the same cause, the total amount prayed for in the petition was the test of the jurisdiction of the Supreme Court. See, also, Armstrong v. R. Co., 46 La. Ann. 1448, 16 South. 468. In Clairain v. Telegraph Co., 40 La. Ann. 178, 3 South. 625, this court held that the claims of the widow and of the minor children for damages resulting from the death of the deceased were properly presented in a single suit, because arising from the same cause; citing Riggs v. Bell, 39 La. Ann. 1031, 3 South. 183, holding that, although defendants may have distinct defenses, they may be brought in together to defend the suit, "where the causes have a cognate origin, and they have a common interest to be adjudicated upon." In the latter case the court said:

"The law abhors a multiplicity of actions, and favors the institution of suits against all defendants who may be liable for the same original cause, and who may have an interest to resist a plaintiff. 'Interest reipublicæ ut sit finis litium.'"

For the same reasons, the joinder of plaintiffs is allowable under similar circumstances, and, where they so join, the defendant should not be required to take a multiplicity of appeals. We consider that, as to the defend-

ants herein, the amount in dispute is the total amount sued for.

It is therefore ordered that the motion to dismiss be overruled.

### On the Merits.

It is necessary to consider first the special defense of nonliability set up by the city of New Orleans.

By the terms of the written contract, Papworth agreed to furnish and to plant 300 laurel oak trees upon the neutral ground of St. Charles avenue, as directed by the board of commissioners; the trees to be of a certain average diameter, shape, and quality. The contractor guarantied that the trees should be satisfactory, and agreed to replace all such as should die or prove defective or unsatisfactory within a certain time. It was stipulated that all the trees were to be well staked, watered, and cared for during the term of the contract.

The contract does not show that the board retained supervision or control of the work, and the evidence does not show any such supervision or control. The words "as directed" refer to the particular places upon the neutral ground at which the trees were to be planted, and do not imply that the board was to supervise the mode of planting. This was left to the superior knowledge of the contractor, and the board and city were protected by his guaranty. The contractor agreed to furnish the trees, to plant, stake, and water them, and to take care of them, so that two years from the date of the contract the full number of 300 trees should be in good condition.

Dillon, in his work on Municipal Corporations, says:

"In other words, the principle of respondeat superior does not extend to cases of independent contracts, where the party for whom the work is to be done is not the immediate superior of those guilty of the wrongful act, and has no choice in the selection of workmen, and no control over manner of doing the work under the contract." Id. (3d Ed.) 1028.

114 LA.—9

In the next section the author announces that this doctrine "does not apply where the contract directly requires the performance of work intrinsically dangerous, however skillfully performed," but it does apply where the work contracted to be done is lawful, and does not constitute a nuisance or is not intrinsically dangerous. In regard to streets, Mr. Dillon says:

"Accordingly the later and better considered cases in this country respecting streets have firmly, and, in our opinion, reasonably, established the doctrine that, where the work contracted for necessarily constitutes an obstruction or defect in the street, of such a nature as to render it unsafe or dangerous for the purposes of public travel unless properly guarded or protected, the employer (equally with the contractor), where the injury results directly from the acts which the contractor engaged to perform, is liable therefor to the injured party." Id. 1030.

We do not think that the planting of small trees upon the neutral ground of St. Charles avenue necessarily constituted an obstruction or defect in the street, rendering it unsafe or dangerous for the purposes of public travel. In the first place, the neutral ground is not ordinarily used by pedestrians, and there is no necessity for such use except on rare occasions. In the next place, the work could have been readily performed without any danger at all if the holes had been dug and the trees planted on the same day. It could not have been foreseen that the contractor would cause the holes to be dug several days before they were needed, and immediately preceding the Mardi Gras processions, during which the neutral ground and all other places in St. Charles avenue are crowded with spectators.

If, as alleged, plaintiff fell into one of the holes made by the contractor, it was not because the work of planting the trees necessarily constituted an obstruction or defect in the street, rendering it unsafe or dangerous for pedestrians, but because of the time and manner in which the work was done—a matter over which the city and its agents had no control.

We therefore must hold that the judgment appealed from is erroneous in so far as it condemns the city of New Orleans.

As between plaintiffs and the defendant Papworth, the issues are purely of fact. Both plaintiffs testify positively that on the night in question Mrs. La Groue, while crossing the neutral ground between Third and Fourth streets, with her husband and child, fell into a hole and was seriously injured. Mrs. La Groue's testimony is positive, direct, and circumstantial as to time, place, and details of the accident. She located the hole as being in that portion of the neutral ground on what is commonly called the "woods side" of the avenue.

The testimony of the defendant is to the effect that on the night in question there were no holes in the neutral ground on either side of the avenue between said streets. Defendant sublet the contract for digging the holes, and really knew nothing as to how far the work had progressed up to Mardi Gras eve. He testified very positively and confidently that no holes had been dug above Fourth street, and stigmatized a statement of a lady witness to that effect as "false." Defendant was recalled to correct his testimony, and admitted that he had no knowledge on the subject, saying:

"To my knowledge, there was none, but a man tells me there was. I didn't run around with the man. * * * I don't know how far he went."

Adolph, the subcontractor, testified that he had dug no holes between Third and Fourth streets, because the ground was full of concrete. He admitted, however, that the ground on the "woods side" of the avenue was easy to dig, and, in answer to the question why he didn't dig there, replied:

"Just because I didn't feel like it."

Adolph had an assistant, who was not called as a witness.

It is indisputable that the subcontractor dug holes above and below the block in question prior to Mardi Gras, and there was no reason why he should have skipped the space on the "woods side" of the street. The other testimony as to the existence of holes at this particular place is conflicting, and need not be reviewed.

In the nature of things, negative testimony on such a matter is not entitled to much consideration. Witnesses may not have seen the holes because their attention was not specially directed to them. But witnesses who testify positively to their existence, and give reasons for their observation, may be perjured, but cannot be honestly mistaken. The issues of fact decided by the trial judge involved the credibility of the witnesses, and the weight to be given positive evidence when opposed by counter evidence negative in its character.

The district judge saw and heard the witnesses. He may have known something of their standing and character in the community. We have nothing before us but the cold record. In other states, such issues are submitted to the final decision of juries. In this state it is made the duty of the Supreme Court to review questions of fact as well as those of law. In doing so, however, we necessarily attach great weight to the verdict of juries and the opinion of the judge a quo on the question of the credibility of witnesses, and will not disturb the finding in such cases unless clearly wrong or manifestly erroneous.

As to the question of amount of damages, the finding of the trial judge is entitled to the same weight and consideration, and the evidence does not warrant us in increasing the quantum allowed by the judgment of the lower court.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by rejecting the demand of plaintiffs against the city of New Orleans, and dismissing their suit against said defendant, with costs, and that as thus amended said judgment be affirmed; plaintiffs to pay all

costs of appeal incurred by the city of New Orleans, and all other costs of appeal to be paid by the other defendant.