## STADELMANN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. May 1, 1908.)

MUNICIPAL CORPORATIONS—DEFECTIVE STREETS—NEGLIGENCE.

Where a city had partially graded the roadway of a street in an outlying district, so that the bed of the highway at the point in question was: between 4 and 7 feet below the top of the adjoining bank, and the city never constructed any sidewalks along the top of the bank which was· rough and in a state of nature, the city was not negligent in failing to· improve the top of the bank, and was not liable for injuries to plaintiff,. who attempted to use the bank on one side of the cut as a sidewalk on a dark night, and while walking there fell into a transverse ditch about a foot wide and between 12 and 18 inches deep, sustaining the injuries. complained of.

Appeal from Trial Term, Queens County.

Action by Henry Stadelmann against the City of New York. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, it appeals. Reversed, and new trial granted.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Royal E. T. Riggs (Theodore Connoly, on the brief), for appellant.
George V. S. Williams (John E. Walker, on the brief), for respondent.

HOOKER, J. One of the issues in this case is whether or not the place where the plaintiff was injured was a public highway, and hence whether there was any obligation on the part of the defendant to keep the same in reasonably safe condition for travel. The learned trial court submitted this question to the jury as one of fact. The jury found the fact in the plaintiff's favor; and, from a judgment entered upon its verdict, the defendant has appealed to this court.

The locality was sparsely settled. There had been a road or way in existence for about 10 years prior to the accident, which had been used by vehicles and pedestrians during that length of time, mainly, however, by those who lived in the region, or others who attempted to reach such abodes or adjacent places of business. Water and gas pipes, but no sewer, had been buried underneath the general line of way. There was a fire hydrant along the way, and the city had erected granite monuments to mark the so-called street. It was not curbed, guttered, or lighted. The place had not been much used as a highway until after the summer of 1904, when the highway department sent men and wagons to improve the condition there, level it off, and fill up holes and rough places. These workmen cut off a part of a hilly place, and for about 200 feet made a cut through the brow of the hill of sufficient width for a highway, and between 4 and 7 feet deep at the deepest part. At the completion of this work, the bed of the highway was left in condition for travel either by vehicles or pedestrians. On a very dark night in January, 1905, the plaintiff undertook to use the top of the bank at one side of the cut as a sidewalk, and, walking there, fell into a transverse ditch about a foot wide and between 12 and 18 inches deep, sustaining the injuries of which he complains. The city had done nothing to improve the condition of the top of the bank. No sidewalk had been laid out or built there, and the surface of the ground was rough and in a condition due to nature and to the work which had been done on the roadway or street.

The plaintiff claims that by reason of the long continued user and its nature, and by reason of the dominion which the city had exercised in making its repairs, it had adopted the place as a public highway, and had invited the public to use it as such; and that hence the duty attached to maintain it in a reasonably safe condition for travel. Conceding this to be so as to the bed of the highway or the portion thereof between the sides of the cut, but not deciding the point, it does not follow that the city is liable for its neglect to build a sidewalk on the top of the bank or to place the same or leave it in a safe condition for use by pedestrians. No one would claim that a town in a rural county would be liable for its failure to build and maintain a sidewalk beside a country road. At the place where the plaintiff was injured, there was nothing to indicate that a sidewalk had ever existed there, or that it was ever the intention of the city to maintain one. It is the experience of the race that improvement of every character, both municipal and otherwise, is of necessity gradual in accomplishment. Time was

when there were no buildings near this so-called street, and hence no reason for the existence of the thoroughfare at all. There was nothing in the surrounding circumstances which demanded that the city should maintain a sidewalk at this place. The jury should not have been allowed to predicate negligence upon the failure of the city to furnish one where the plaintiff was injured. We may concede that the work which the city did on the body of the highway was sufficient to invite its use, but not so on the top of the bank where the plaintiff met his accident. It must be taken as a sound rule that the physical opening of the roadway or bed of a highway by a municipality does not render the municipality liable for its failure to build sidewalks simultaneously. There was nothing in the general circumstances of the locality, and nothing in the physical condition of the sides of the roadway, which might be construed by any one as indicating a sidewalk for the travel of pedestrians. The conclusion must be that the plaintiff should be held to have used it for just what it appeared to be, namely, ground in more or less rough condition at the sides of a highway whose bed afforded safe means for travel.

The case is not like Jewhurst v. City of Syracuse, 108 N. Y. 303, 15 N. E. 409. In that case there was no visible boundary of the line of the city street, and nothing to induce the belief in any one passing there and exercising reasonable care that he was not within the line thereof. There the sidewalk consisted of two strips of 12-inch plank, laid lengthwise of the street, one foot apart, one strip within and one without the limits of the street, and the plaintiff was injured by the breaking of the plank which was without. Here there was not only nothing to indicate that the place where the plaintiff was walking was part of the street, but, on the other hand, the presence of the embankment itself was some indication that the place for travel was at the bottom, instead of the top of the embankment. In Schafer v. Mayor, etc., 154 N. Y. 466, 48 N. E. 749, what had been done upon the street was somewhat similar to the work the defendant had performed in this case. There the city had left the cover of a manhole projecting about five inches above the surface of that part of the roadway which was intended for vehicles to travel over. The conveyance of plaintiff's intestate came in contact with the manhole. He was thrown out and killed. The case might be like the one at bar had the plaintiff here come in contact with some obstruction at the bottom of the bank, but he did not.

Our conclusion is that negligence on the part of the defendant was not established, and the judgment should be reversed and a new trial granted, costs to abide the event. All concur.