LAND, Justice.
 

 1. The City of Shreveport is the owner of the lands and buildings known as State Fair Grounds in that city, including a building called the Machinery Building, which abutted on one of the city streets that ran through the Fair Grounds.
 

 A contract was entered into by the city with the Civil Works Administration, CWA, to demolish the Machinery Building and to make numerous other improvements.
 

 While this building was being demolished by the employees of CWA, it became necessary to remove a guy wire running from an electric light pole to the front portion of the building. In order to remove this wire, Todaro, the plaintiff, an employee of the Southwestern Gas & Electric Company, Inc., and other workmen went to the scene and prepared to do the necessary work. While standing on the sidewalk in front of the building, Todaro was injured by the falling of the canopy or shed which had been fastened to the building and which projected over the sidewalk.
 

 The Court of Appeal (170 So. 356) correctly held that the relation of CWA to the City of Shreveport was that of an independent contractor; that the city had no control over CWA workmen; that these workmen were not employees or servants of the city; and that, therefore, the city was not liable under the
 
 respond-eat superior
 
 doctrine.
 

 2. But where the Court of Appeal erred, in our opinion, is in holding that, despite the fact that the doctrine of
 
 respondeat superior did not
 
 apply, the City of Shreveport was liable because of its duty to keep its sidewalk in a safe condition.
 

 It. is conceded that Todaro’s injuries did not result from any defect in the sidewalk or street. The proximate cause of his injuries, as held by the Court of Appeal, was the absence of barricades or other warnings which would have kept him from being where he was at the time of the accident.
 

 In holding that the City of Shreveport was negligent in this respect, the decision of the Court of Appeal is not in harmony with the jurisprudence of this .state, or
 
 *71
 
 with the principles of law laid down by the text-writers on municipal corporation.
 

 Dillon, in his work on Municipal Corporations, says: “In other words, the principle of
 
 respondeat superior
 
 does not extend to cases of independent contracts, where the party for whom the work is to be done is not the immediate superior of those guilty of the wrongful act, and has no choice in the selection of workmen, and no control over manner of doing the work under the contract.” Dillon on Munic. Corp. (3d Ed.) p. 1028.
 

 In regard
 
 to streets,
 
 Mr. Dillon says: “Accordingly the later and better considered cases in this country respecting
 
 streets
 
 have firmly, and, in our opinion, reasonably,
 
 established the doctrine that, where the work contracted for necessarily constitutes an obstruction or defect in the street,
 
 of such a nature as to render it unsafe or dangerous for the purposes of public travel unless properly guarded or protected, the employer (equally with the contractor)
 
 where the injury results directly from the acts which the contractor engaged to perform,
 
 is liable therefor to the injured party.” Id. p. 1030. (Italics ours.)
 

 The City of Shreveport did not enter into any contract with CWA for any work to be performed, either
 
 in the street
 
 in front of the Machinery Building or
 
 on the sidewalk
 
 in front of that building. The injury to Todaro did not result “directly” from “an obstruction or defect in the street,” or on or in the sidewalk in the front of this building.
 

 The Court of Appeal refers to the danger in this case as a “lurking” danger and further in the opinion, 170 So. 356, 363, it is stated: “There is no doubt that the tearing down of the
 
 rear portion
 
 of the building was observable by persons approaching
 
 the front or using the sidewalk, because of the open arches in the wall,
 
 but there was
 
 nothing
 
 to indicate that
 
 a hidden defect existed in the front wall and that the canopy was not properly supported.”
 
 (Italics ours.)
 

 The defect in the front wall was not due to the negligence of the agents and employees of the City of Shreveport, but solely to the fault of a third person, for which the city was not liable.
 

 Manifestly, the danger of the canopy’s falling was not apparent. If it was not apparent, then the city, not being an insurer of the safety of pedestrians using the street, is not chargeable with negligence for failing- to take precautions against a nonapparent danger. The city certainly had a right to presume that, if the danger of the canopy’s falling was imminent, the independent contractor, CWA, through its superintendent, would take the necessary steps to prevent accidents.
 

 As CWA was an independent contractor in its relation to the City of Shreveport, the negligence of the employees of CWA cannot be charged to the city.
 

 Without doubt, it was the duty of CWA to have provided for barricades and warning signs for the protection of pedestrians on the sidewalk in front of the
 
 *73
 
 building, as this federal agency was the independent contractor, had sole charge of the workmen, and sole supervision of the work of wrecking the Machinery Building in the State Fair Grounds in the City of Shreveport. See Ramon v. Feitel House Wrecking Company et al., 17 La.App. 193, 134 So. 426, decided by Court of Appeal for the Parish of Orleans, Judge Higgins being the organ of the court.
 

 In the case of La Groue v. City of New Orleans, 114 La. 253, 38 So. 160, cited by the Court of Appeal, the plaintiff sought to hold the City of New Orleans liable for injuries sustained by her, occasioned by her falling into an unprotected hole in St. Charles avenue, which was dug by an independent contractor who was employed to plant a large number of trees upon the neutral ground of the avenue. In the opinion in that case it is said at page 258 of 114 La., 38 So. 160, 161: “ ‘In the next place, the work could have been readily performed without any danger at all if the holes had been dug and the trees planted on the same day.
 
 It could not have been foreseen that the contractor would cause the holes to be dug several days before they were needed,
 
 and immediately preceding the Mardi Gras processions, during which the neutral ground and all other places in St. Charles avenue are crowded with spectators.’
 

 “If, as alleged, plaintiff fell into one of the holes made by the contractor, it was not because the work of planting the trees necessarily constituted an obstruction or defect in the street, rendering it unsafe or dangerous -for pedestrians,
 
 but because of the time and manner in which the work was done
 
 — a
 
 matter over which the city and its agents had no control.”
 
 (Italics ours.)
 

 In the instant case, the City of Shreveport could no more anticipate negligence on the part of the employees of CWA than could the City of New Orleans in the La Groue Case anticipate negligence on the part of its independent contractor.
 

 Certainly, a hole in the neutral ground on St. Charles avenue during Mardi Gras is a much more obvious danger than was the possibility of the canopy’s collapsing in this case, through a hidden defect.
 

 If it was not negligence for the City of New Orleans to fail to erect barricades or otherwise to take such precautions as would have prevented Mrs. La Groue from falling into the hole in the neutral ground, then it was not negligence for the City of Shreveport to fail to erect barricades or otherwise to take the precautions which would have prevented Todaro, the plaintiff, from being where he was at the 'time the canopy collapsed.
 

 While the Machinery Building was being demolished by CWA, no part of its side or rear walls had tumbled dowp accidentally, and, the fall of the canopy from the front wall was due to a defect that was latent, and therefore wholly unknown to the City of Shreveport or to any one else. It was therefore not possible for the City of Shreveport to have actual or constructive knowledge of such defect.
 

 
 *75
 
 In Weinhardt v. City of New Orleans, 125 La. 351, 355, 356, 51 So. 286, 288, it is said by this court: “There is no question but that a municipality must keep its streets and sidewalks in a condition sufficiently safe to enable those who walk over them to cross the gutters at intersections without imminent danger.
 

 “It must be said, however, that the city is not an insurer of the safety of the pedestrian, and that it must appear that the danger was owing to the negligence of the city. There is no negligence for which she can be held,
 
 unless it appears that she has been warned or notified, either expressly or by implication.
 

 "The neglect to make the repair for a considerable time gives rise to an implication which is considered in the light of a sufficient notice to render the city liable.
 

 “The foregoing finds support in Blume v. New Orleans, 104 La. [345], 348, 29 So. 106, and Lorenz v. City, 114 La. 802, 38 So. 566.
 

 "Of course, the defect must exist, and after the defect the municipality must have had reasonable time for its repair.
 
 In other words, there a time must elapse in which to learn the facts. Abbott, Municipal Corporations, vol. 2, p. 2321.” (Italics ours.)
 

 As the defect in the front wall of the Machinery Building at the State Fair Grounds in the City of Shreveport was a hidden one, and not known to the City of Shreveport, or to any one else, it is difficult to understand the holding of the Court of Appeal in this case, that the city was liable to plaintiff in damages under the doctrine that it was the duty of
 
 the
 
 city
 
 to ’
 
 maintain its sidewalks in a safe condition. But, conceding this duty to be true, the injury' to plaintiff did not arise from a hidden
 
 defect in the sidewalk itself.
 
 The city may be responsible for such a defect, as its sidewalks are constructed by its agents and servants. The city may be responsible likewise for a negligent defect, if its agents and servants are engaged in demolishing a building. But it is going far afield to hold that the city is liable, in any case, for injuries resulting from the fault of a third person, for which the city is not responsible, and arising solely from unknown hidden defects and nonapparent dangers. Such a doctrine will have the effect of putting an unwarranted liability and burden on municipal corporations, and, in our opinion, is not sound and not sustained by precedent.
 

 In Ruling Case Law, vol. 13, par. 289, p. 351, it is said: “A municipal or quasi municipal corporation is not responsible for every accident that may occur on its streets or highways, nor is it a guarantor of the safety of travelers thereon or an insurer against all injury which may result from obstructions or defects therein. Nor does it warrant that its streets shall be free from obstructions or defects or that they will be absolutely perfect and safe at all times.”
 

 In conclusion, the case of Elias v. Mayor and Board of Trustees of City of New Iberia, 137 La. 691, 69 So. 141, cit
 
 *77
 
 ed in the opinion of the Court of Appeal, cannot possibly have any application to the facts of this case. It was held in that case that the liability of a municipal corporation, which lawfully engages in the business of operating an, electric light plant to light streets and public places, and to sell its current to its. inhabitants, is governed by' the rules applicable to any private corporation or individual conducting a similar enterprise.
 

 The City of Shreveport is not engaged in the business of wrecking its own public buildings and those of its inhabitants.
 

 In Elias v. Mayor, etc., of City of New Iberia, cited supra, the wife of the plaintiff was electrocuted by a live electric wire, which had been negligently connected
 
 by an agent
 
 of the city with the residence of plaintiff, in order to supply plaintiff with electric lights. Plaintiff sued the city for damages for the death of his wife, the basis of the suit being the negligence of the city, and recovery was had, plainly under the doctrine of
 
 respondeat superior.
 

 There was no independent contractor involved in the case, and no damages claimed because of the failure of the city to keep its sidewalks in safe condition.
 

 3. The plaintiff, Todaro, was an employee of the Southwestern Gas & Electric Company, which intervened in this suit, and claimed to be paid out of any award to plaintiff for all medical and hospital expenses and costs paid by intervener, as a result of plaintiff’s accident and injury, together with all compensation paid by it to the plaintiff under the Compensation Law, as well as additional compensation payments which the Southwestern Gas & Electric Company is liable for to Todaro under the Compensation Law. Paragraphs 2 and 3 of section 7 of Act No. 20 of 1914, as amended by Act No. 38 of 1918, § 1, and Act No. 247 of 1920, § 1.
 

 A jury trial resulted in a verdict in. plaintiff’s favor for $50,000, and in favor of the intervener as prayed for. Motions for a new trial were filed by both defendants, City of Shreveport and State Fair of Louisiana, and were argued and submitted. On plaintiff’s counsel entering a remittitur for $25,000, the motions were overruled.
 

 Judgment was thereafter signed condemning defendants, in solido, to pay to plaintiff the sum of $25,000, with legal interest from judicial demand and all costs, and ordering that intervener be paid by preference and priority the sum of $250 as medical and hospital expenses, and the sum of $1,121.25 as compensation paid to plaintiff up to and including May 29, 1935, with legal interest on said amounts from February 2, 1935, until paid, and whatever additional compensation payments intervener has paid, or is liable and obligated to pay, plaintiff in the future.
 

 As to the defendant State Fair of Louisiana, it is said in the opinion of the Court of Appeal: “Having determined that the
 
 respondeat superior
 
 doctrine is not applicable to this case, and there be
 
 *79
 
 ing no other theory under which the Fair might be held responsible, it becomes unnecessary for us to discuss this contention,” which was that there can be no liability on the part of the Fair for the reason that it is a nonprofit or charitable corporation, operated for the benefit of the citizens of Shreveport, and vicinity, of which plaintiff is one. Record, p. 285.
 

 The Court of Appeal, Second Circuit, rendered the following judgment in the case: “For the foregoing reasons, it is ordered, adjudged, and decreed that plaintiff’s judgment against the State Fair of Louisiana is reversed and his suit dismissed; that his judgment against the city of Shreveport is amended by reducing the recited quantum to $15,000, and, as amended, it is affirmed; that the judgment in favor of intervenor, Southwestern Gas & Electric Company, Incorporated, is amended -by rejecting its demands as against the State Fair of Louisiana, and, as amended, it is affirmed.” Record, p. 287.
 

 For the reasons herein assigned, it is ordered, adjudged, and decreed that the judgment of the Court of Appeal, Second Circuit, be and is hereby amended by rejecting the demand of plaintiff against the City of Shreveport also, and by ■ rejecting the demand of intervener, Southwestern Gas & Electric Company, Incorporated, against the City of Shreveport.
 

 It is now ordered that the judgment, as amended, be affirmed; and that plaintiff pay the.costs of this suit.
 

 O’NIELL, C. J., dissents on the ground that the failure of the city to have a barrier at or across the sidewalk, or some such means of warning the public of the danger, in front of the city’s building, which was being demolished, renders the city liable in the same way as for a defect in the street.