### LOPEZ v. BERTEL et al.

### No. 17389.

Court of Appeal of Louisiana. Orleans.

Oct. 21, 1940.

Gordon Boswell and Stanley E. Loeb, both of New Orleans, for appellants.

Harry R. Cabral and Harry Herman, both of New Orleans, for appellee.

JANVIER, Judge.

This litigation results from an automobile collision which occurred at about 2:00 o'clock in the morning on May 7, 1939, at the corner of Canal Street and Carrollton Avenue in New Orleans.

The cars involved were a Ford owned by Lawrence Lopez, Sr., and operated by his son, Lawrence, Jr., aged 17, two companions being seated on the front seat with him, and another car owned by Numa V. Bertel, Sr., which car, he alleges, was also a Ford, but which his son, Numa, Jr., who was driving it, states was a De Soto.

Lopez initiated this proceeding by filing suit in the First City Court against Bertel, Sr., and his liability insurance carrier, New York Casualty Company, both on his own behalf and for the use and benefit of his minor son, alleging various acts of negligence of young Bertel as the cause of the accident. In behalf of his son he claimed $50, and in his own behalf he prayed that he be awarded $90 for loss of earnings caused by the inability to use his car for a period of eighteen days, $10 "for doctor's bills growing out of said accident" and $50 for that part of the automobile repair bill which he himself was required to pay.

While he does not allege it, it appears, from other facts to which we shall refer, and also by inference from other allegations, that, of the total repair bill amounting to $169, Lopez, Sr., paid $50, the balance having been paid by his insurer under a policy of "collision" insurance, by the terms of which his insurer agreed that, should his car, as a result of collision, sustain damage necessitating repairs costing more than $50, the first $50 should be paid by him (Lopez) and the balance would be paid by it (the insurer).

The said insurer, American Mutual Liability Insurance Company, then intervened, alleging that it had issued the said policy of collision insurance; that it had paid $119 of the cost of repairing the damage to the Lopez car and that it had taken from Lopez a subrogation and an assignment of his rights against the tort-feasor. It prayed for judgment for $119 against Bertel, Sr., and his insurer, the New York Casualty Company.

Both defendants—Bertel, Sr., and the New York Casualty Company—in answer to the petitions of plaintiff and of intervenor, denied that the accident resulted

from any negligence of young Bertel and averred that the true cause was the negligence of young Lopez. Bertel, Sr., then assuming the position of plaintiff in reconvention, charged that the damage to his car had been caused solely by the alleged negligence of young Lopez and he prayed in reconvention for judgment against Lopez, Sr., and his liability insurance carrier for the amount of said damage, to-wit, $276, the loss admittedly sustained by him as the result of the damage to his car.

To the petition of intervention of the American Liability Insurance Company, both Bertel and the New York Casualty Company filed an exception of no right or cause of action.

When the matter came up for trial below, the judge a quo referred the exceptions to the merits. After a trial there was judgment for Lopez, Sr., in his own behalf for $60 and, in behalf of his minor son, Lopez, Jr., for $50, and in favor of American Mutual Liability Insurance Company, intervenor, for $119, and dismissing the reconventional demand of Bertel. Both defendants have appealed and Lopez, Sr., has answered the appeal praying for an increase in the award to him in his own behalf to $150, as originally prayed for.

When the matter was argued before us, counsel for defendants suggested that, though there had not been filed in the trial court, nor in this court, any challenge to the jurisdiction of the court below—to-wit, the First City Court of New Orleans—we should, nevertheless, take notice of that lack of jurisdiction and, on our own motion, dismiss the suit since the lack of jurisdiction is said to result from the fact that the amount claimed exceeds the maximum jurisdictional limit of the First City Court. We shall first consider this suggestion.

█ Wherever the court below was without jurisdiction ratione materiae, we not only are authorized, but are required, to dismiss a suit even though there has been filed no pleading challenging the jurisdiction. Among the annotations appearing under Article 606 of Dart's Code of Practice appears the following: "When jurisdiction is wanting ratione materiae, the court is bound ex officio to notice it; and the judgment of a court wanting such jurisdiction will be null. Dupey v. Greffin ['s Ex'r], 1 Mart. (N.S.) 198; Lafon['s Ex'rs] v. Lafon, 1 Mart. (N.S.) 703; Waters v. Wilson, 3 Mart. (N.S.) 135; Kerr v. Kerr, 14 La. 177; Greiner v. Thielen, 6 Rob. 365; Fleming v. Hiligsberg, 11 Rob. 77; Tague v. Royal Ins. Co., 38 La.Ann. 456; Riggs v. Bell, 39 La.Ann. 1030, 3 So. 183; Gee['s Heirs] v. Thompson, 39 La. Ann. 310, 1 So. 537; Weis v. New Orleans Board of Trade, 125 La. 1010, 52 So. 130."

See, also, State ex rel. Fourroux v. Board of Directors, Public Schools, Jefferson Parish, 3 La.App. 2; Heard v. Monroe Sand & Gravel Company, Inc., 6 La.App. 362.

The argument that the lower court is without jurisdiction is founded on the contention that we should consider the amount in dispute as $319 and should hold that, since this exceeds $300, the maximum jurisdictional limit of the First City Court, that court was without jurisdiction.

The items of damage which are involved and which, according to defendants, should be considered as parts of the same claim, are as follows:

(1) Claimed by Lopez, Sr., on behalf of Lopez, Jr., for personal injuries to the latter....... $ 50.00

(2) Claimed by Lopez, Sr., as medical bills made necessary by the injuries sustained by Lopez, Jr. .................. 10.00

(3) Claimed by Lopez, Sr., as his own loss resulting from damage to his car............... 50.00

(4) Claimed by Lopez, Sr., as the value of the loss of the use of his car for eighteen days.... 90.00

(5) Claimed by American Mutual Liability Insurance Company, subrogee of Lopez, as the amount paid by it on account of the damage to the Lopez car ...................... 119.00

$319.00

The argument of defendants is that these items of damage form part of only one claim arising out of only one tort founded on only one cause of action; that the subrogation of a part of his claim by Lopez, Sr., to an assignee did not have the effect of permitting two separate parts of the same claim to be tried in the First City Court since, if there had been no subrogation and had Lopez filed suit for the entire amount, he could not then have presented that claim for $319 in that court, and that

the claim of Lopez, Sr., for himself and the claim on behalf of his son are also parts of only one claim.

As apparent authority for the view that the subrogation did not make two claims where only one existed before, we find interesting Hanton v. New Orleans & Carrollton R. R. Light & Power Company, 124 La. 562, 50 So. 544. Kearney v. Fenerty, 185 La. 862, 171 So. 57, also tends to throw light on this question.

█ But it is not necessary that we consider further whether the subrogation had the effect of making two claims where only one existed originally for the reason that, even if it be conceded that the claim of Lopez, Sr., and the claim of his subrogated insurer should be treated as one, we would still be confronted with the fact that these two claims together do not exceed $300, and that it is only if the claims asserted in behalf of Lopez, Jr., be added to all the other claims that that result is accomplished. And we do not think that that part of the claim of Lopez, Sr., which represents repairs to his car and that part which represents loss of the use of the car should, when the question of jurisdiction is considered, be added to the claim on behalf of Lopez, Jr.

Though the matter is not entirely free from doubt, the prevailing view in Louisiana at this time seems to favor the treating of the two claims—that of the father and that on behalf of the son—as separate and distinct. They are not to be likened to the claims of a husband and of a wife where the wife sues for damages for personal injuries and the husband joins in the same suit to recover the expense to which, as head of the community, he has been put for medical and similar costs made necessary by the wife's injuries. It is settled by our Supreme Court that in such latter case jurisdiction is determined by adding the two claims.

In La Groue et ux. v. City of New Orleans, 114 La. 253, 38 So. 160, 161, this question was presented and, in answering it, the Supreme Court said that "the amount in dispute is the total amount sued for". The reason for such a result is obvious. The claim of the husband for expense is dependent upon the right of the wife to recover for her injuries. The two are so closely related and the husband's claim is so dependent upon the success of the wife's that it is manifestly quite proper to say

that the sum of the two represents the amount in dispute. They are both dependent upon the fact that the wife sustained injuries. It is to be regretted that the court in that case cited Bowman et al. v. City of New Orleans, 27 La.Ann. 501, as authority for the result reached, for the Bowman case did not involve related claims of a husband and of a wife, but claims of separate plaintiffs, each of whom sought recovery for damage to his or her individually owned property, the damage having been caused by the action of the City of New Orleans in closing certain drains. The result reached in the Bowman case was not based on the view that the total of all of the claims in reality represented only one amount in dispute, but on the conclusion that, since the various plaintiffs, for their own convenience and economy, had brought one suit, they should not be heard to contend that the city should take separate appeals—each to the court of appeal—instead of one appeal to the Supreme Court. Then, too, the result reached in the Bowman case is obviously contrary to the conclusion later arrived at by the Supreme Court in Alessi et al. v. Town of Independence, 142 La. 338, 76 So. 792, and still later in Hotard et al. v. Perilloux, 160 La. 752, 107 So. 515. The result reached by the Supreme Court in these two later cases was followed by our brothers of the Second Circuit in Shreveport Laundries, Inc. et al. v. Red Iron Drilling Company, Inc. et al., 192 So. 895.

In the Alessi case [142 La. 338, 76 So. 793], "six landowners, each owning a separate tract in which the others had no interest," joined in the one suit. There arose the question whether the appeal should have been to the Supreme Court or to the Court of Appeal. The Supreme Court held that it should have been to the Court of Appeal, saying: " * * * the amount of each claim was far below the appellate jurisdiction of this court. The question then is: Could they, by consenting to cumulate their demands, bring them within the appellate jurisdiction of this court? Surely, if each separate claim had been for an amount below the original jurisdiction of the district court, the plaintiffs could not have given that court jurisdiction, by consenting to cumulate their demands, even though their cause of action arose from one and the same alleged quasi offense on the part of the defendant. And it seems equally plain that the plaintiffs

did not, and could not, give this court jurisdiction of the several claims of which we had no jurisdiction, by consenting to cumulate their demands."

The conclusion to which the court came in La Groue v. City of New Orleans, supra—that the claim of the husband and that of the wife are treated as one when the question of jurisdiction is being considered—is, we think, not in conflict with the holding in the Alessi case and in the Perilloux case; that the claims of separate plaintiffs, not dependent one upon the other and each involving separate damage, cannot be cumulated when considering jurisdiction.

In passing, we note that our brothers of the First Circuit have failed to realize the distinction between the case in which there are presented the claims of the husband and of the wife, both dependent upon the wife's injuries, and the case of separate and distinct plaintiffs, each of whom sustains a loss not dependent upon the loss sustained by any of the others.

In Ducharme et ux. v. Smith, 9 La.App. 264, 119 So. 268, 269, that court (Court of Appeal, First Circuit) was presented with one suit brought by a husband and a wife each asserting a separate claim. It should be noted that the husband's claim was not for any expense caused by the wife's injuries, but was for the damage caused to his automobile, whereas the wife's claim was not for physical injuries, but was for inconvenience and mental anguish, not necessitating medical expense. The court held that "these demands, though originating from the same alleged source, are however, separate and distinct."

But later, in Granier v. Bourgeois, 189 So. 474, the same court reached the conclusion that it had been wrong in the Ducharme case, basing this second conclusion on its interpretation of the holding of the Supreme Court in La Groue v. City of New Orleans, supra. Granier v. Bourgeois, supra, did involve a claim of a wife for personal injuries and a claim of the husband for expenses made necessary by treatment of those injuries, and therefore this case seems to us analogous to the La Groue case, whereas the Ducharme case, not involving such related claims, seems to us not to have been within the doctrine announced in the La Groue case, but rather within the doctrine of the Alessi case.

In the case at bar the claim of Lopez, Sr., and that on behalf of Lopez, Jr., are not dependent one upon the other. The claim of Lopez, Sr., in no way is involved with the injuries of Lopez, Jr., though it is true that, if either is to recover, it is because of the same tort and of the same acts of negligence of young Bertel. If it should appear that the accident had occurred through the negligence of the driver of the Bertel car, but that young Lopez had sustained no injury, there could, of course, be no recovery on his (Lopez, Jr.) behalf, and yet that fact would not prevent recovery by Lopez, Sr., for the cost of repairing his car.

We repeat that this case should be put into the category of the Alessi and Perilloux and Shreveport Laundry Company cases and that the claim of the father for damage to his car should not be added to his claim on behalf of his minor son so as to justify the conclusion that the amount in dispute is the total of those two claims. It follows, therefore, that the First City Court was vested with jurisdiction and properly heard the case.

We thus pass to a consideration of the merits of the controversy.

Young Lopez, with two companions on the front seat with him, was driving his father's Ford on Canal Street in the direction of the Mississippi River. Young Bertel, who was only sixteen years old at the time of the accident, was operating his father's car down South Carrollton Avenue. With him were five other young men—two on the front seat with him and three in the rear. At the intersection which the two cars were approaching there was a traffic semaphore signal, which although it was then about 2:00 o'clock in the morning, still was operating—that is to say, was changing periodically from red, or "stop", to amber, or "caution", and then to green, or "go". On each of the intersecting streets there were two driveways. On Canal Street there was a neutral ground, but on Carrollton Avenue, between the two driveways there was a small building which housed a pumping plant, or other municipally owned machinery, and which prevented either driver from seeing the other car until both had reached a point rather near the intersection. Neither car stopped before entering and the Lopez car—on Canal Street—crashed into the left side of the Bertel car, which was crossing on Carrollton Avenue.

It is charged by plaintiff and by intervenor that Bertel, Jr., approached the inter-

section at an excessive rate of speed and that the traffic light facing him showed red. It is also charged that he was not on the lookout for cars on the other street and that he did not have his car under control. Almost identical charges are hurled at young Lopez by defendants.

■ We shall first consider the evidence concerning the traffic light.

Lopez and his companions say that, while they were still a short distance from the corner, the light changed from red to amber and then to green, so that, as they entered the intersection, it had already been green for several seconds. In this they are corroborated by certain disinterested witnesses, Mrs. Joseph Roth and her young nephew, Henry Neuberger, who were a short distance back of them in another car going in the same direction, and both of whom are positive that the light favored Lopez as he approached the intersection.

With the exception of Nute Blue, Jr., those of the young men who were in the Bertel car, and who testified in person, stated that the light facing them was green, and it was agreed that those who were not produced would have so testified. But Blue, one of Bertel's companions, stated that the light was red as Bertel entered the intersection. His testimony was challenged by counsel for the defendants and it was shown that shortly after the accident he had stated in an interview that he had not seen the light at all. The young man frankly admitted that he had made this statement, but said that he had done so because he had been asked to help Bertel. He said that he had reached the conclusion that he was wrong in agreeing to do so and that, at the time of the trial, he had concluded to tell the truth about the matter.

We think it very obvious that the judge, a quo, resolved this question of doubt in favor of plaintiff because he could not have reached the other conclusion without holding Lopez guilty of at least contributory negligence. The evidence fully justifies such a conclusion.

The statements of the young men in the Bertel car are not impressive, whereas those of the young men who were in the other car not only seem much more reasonable, but have the corroboration of impartial disinterested witnesses.

We thus find that young Bertel entered the intersection in spite of the red light that was facing him, and we further find that he entered it at a speed which was so excessive as to be dangerous. That he did not look for Lopez, or any other automobile which might have been approaching, is evident, for he testified: "I didn't see the Lopez car until I was struck".

■ The only question which presents any serious difficulty is whether young Lopez was also negligent in not stopping when it became evident that the Bertel car would cross in front of him at high speed. But his failure to realize that the driver of the other car intended to do this resulted from the presence in the line of his vision of the building at the corner between the two roadways of Carrollton Avenue. Since the semaphore light required Bertel to stop and permitted Lopez to enter the intersection without stopping, he should not be charged with negligence in not anticipating that Bertel would drive his car at high speed into the intersection while the traffic light facing him was red. It cannot be said that Lopez was at fault in not stopping in time to avoid striking the other car, in the sudden emergency which confronted him when he suddenly realized that the Bertel car was approaching the point of intersection. He himself was operating his car at a speed of from twenty to twenty-five miles per hour. The other car was being driven at a speed in excess of this, so that, after the other car emerged from the obscurity created by the afore-mentioned house, there remained only a period of two or three seconds within which Lopez' car could have been brought to a stop. In failing to accomplish the desired result in so short a time, it cannot be said that he was at fault.

When we consider the quantum, we reach the conclusion that the amounts allowed by the trial court are correct. The claim of Lopez, Sr., for loss due to inability to use his automobile is not at all substantiated by the evidence, but the other amounts claimed are thoroughly proven.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellants.

Affirmed.