Defendant, a town of some 1,500 inhabitants, availing itself of the generous paternalism of the Federal Government, enlisted the aid of the Works Progress Administration, a Federal agency, hereafter referred to as the WPA, in its desire to have a system of gas lines installed throughout its limits. Eighteen miles of piping were laid. The only part the town exercised in the confection, execution and consummation of the project was to sponsor it, designate the streets on which the lines were to be laid, inspect the piping before laid to ascertain its efficiency and to pay a small part of the total cost. It exercised no control or supervision over the work nor had it the right to do so. The WPA bought, paid for and delivered all material used in the project, hired and paid all labor and exercised plenary control and supervision over the work as it progressed. The status of the WPA, as regards defendant, therefore, was that of independent contractor. Todaro v. City of Shreveport et al.,187 La. 68, 174 So. 111; Washington v. Sewerage Water Board of New Orleans et al., La.App., 180 So. 199.
During the afternoon of Saturday, April 10, 1937, a truck of the WPA unloaded several sections of two-inch pipe forty feet long in front of the store of R.C. Meyers, located in the southeast quadrant of the intersection of Gordon Street with the highway leading from Alexandria to Leesville, intended for use in a gas line from the highway down the street to a schoolhouse some three blocks distant. At Mr. Meyers' request the pipe was immediately moved to and stacked along the west side of his store building and beyond.
Gordon Street is defendant's westerly limits. It is unimproved, not curbed, guttered nor even graveled. There are no sidewalks on either side and the areas adjacent thereto support a luxuriant growth of weeds and grass. It is occasionally "dragged" by parish equipment. The town has made no effort whatever to keep it in traveling condition. It is generally referred to as a road. Mr. Meyers and others did not even know its name. It is used to a limited extent by pedestrians and vehicles. That part of the town is sparsely settled by colored people. Other streets leading from the highway south are graveled and for this reason are more generally used than is Gordon Street.
The intervening area between the Meyers store building and the next street south (a block's distance) is unimproved save a small portion thereof immediately to the rear of the store building. This excepted portion is enclosed by a high picket fence which ties to the store building at its southwest corner. The fence does not parallel Gordon Street but bears from it southeasterly until it turns directly east. Pedestrians desiring to reach the negro quarters by the most direct route from the store and the sawmill across the highway walk along the west side of the store and follow the picket line until it turns east and from this point they traverse diagonally southeasterly the vacant area to the next street south. So much had this been done that well-defined paths were beaten through the weeds and grass.
Plaintiff, a colored woman, lived on the highway not a great distance west of the Meyers store. Accompanied by her brother, about the hour of 7:30 P.M. the day the sections of pipe were unloaded at the store, she, on foot, left her home to attend church services in the quarters south of the store. She traveled easterly on the highway, passed the store and Gordon Street and reached the church by turning to her right on a graveled street beyond. When the services were ended she decided to return to her home by the shorter route, the beaten path through the vacant lot above described. She stumbled over the piping or a section thereof, fell and sustained injury to her right ankle. She sues the town for damages and bases her right thereto upon two alleged acts of negligence, breaches of duty on defendant's part, to wit:
The failure to light the locus at the intersection of the street and highway, and allowing the alleged sidewalk to become and remain obstructed, without warning signs, in such way and manner as to be a hazard to persons using the same. She alleges knowledge of this condition on the part of the town, its officials and agents.
Defendant denies that plaintiff was injured to the extent by her alleged, but avers that if so injured such is not attributable to *Page 512 
any fault or negligence on its part. It affirmatively alleges that if any pipe was deposited on Gordon Street or thereabout over which plaintiff fell, that it was done by the WPA, a Federal agency, an independent contractor over whom defendant had no supervision or control nor the right so to do and for whose acts of negligence defendant is in no wise responsible. It admits that no light was maintained at the corner of Gordon Street and the highway.
In the alternative, the contributory negligence of plaintiff is specifically urged as a bar to recovery by her even though it be found and held that the accident was in whole or in part due to the fault or negligence of defendant. The lower court rejected plaintiff's demand and she appealed to this court.
Plaintiff, to support her contention that defendant's liability for her injuries arose from allowing the pipe to be stacked and strung along the alleged sidewalk, cites numerous cases adjudicated in this state wherein it is held that municipalities, while not insurers of the safety of those who use their streets and sidewalks, are bound to keep such streets and sidewalks in a reasonably safe condition and free from traps. But these cases, for several reasons, are not applicable nor controlling in the present case. One reason is that there was no sidewalk on Gordon Street to be obstructed. The testimony does not with any degree of certainty establish that the pipe was left on ground that would have been the base of a sidewalk had one been constructed. The fact that pedestrians chose to travel through the weeds and grass rather than on the street proper did not in any sense have the effect of converting the path traveled into a sidewalk so as to commit the town for responsibility for its upkeep and protection. Stadelmann v. City of New York,126 App. Div. 352, 110 N.Y.S. 682.
The cited cases are not pertinent for the additional reason that the WPA's relation to the town was that of independent contractor and even though it be admitted arguendo that the pipe was left on a sidewalk in such manner as to be a menace to pedestrians, still defendant cannot be held responsible for the results of the accident. The Todaro case and La Groue v. City of New Orleans, 114 La. 253, 38 So. 160, quoted from approvingly in the Todaro case, are conclusive of the question.
Todaro, an employee of the Southwestern Gas Electric Company, was seriously injured when a canopy of a building on the Fair Grounds, owned by the City of Shreveport, then being demolished by a Federal agency, the Civil Works Administration, fell to the sidewalk in front of the building. His suit for damages against the city was rejected on the ground that the CWA's relation to the city was that of independent contractor.
The CWA was not engaged to nor was it making any repairs to the sidewalk. The city was exercising no control or supervision over the manner and method by which the work was being done. The negligence of the employees of the CWA alone was responsible for the accident. No warning signs were posted nor barricades erected to apprise the public of the dangerous situation then existing. Justice Land, the court's organ, in disposing of Todaro's contentions, said [187 La. 68, 174 So. 113]:
"In the case of La Groue v. City of New Orleans,114 La. 253, 38 So. 160, cited by the Court of Appeal, the plaintiff sought to hold the City of New Orleans liable for injuries sustained by her, occasioned by her falling into an unprotected hole in St. Charles avenue, which was dug by an independent contractor who was employed to plant a large number of trees upon the neutral ground of the avenue. In the opinion in that case it is said at page 258 of 114 La., 38 So. 160, 161: `"In the next place, the work could have been readily performed without any danger at all if the holes had been dug and the trees planted on the same day. It could not have been foreseen that the contractor would cause the holes to be dug several days before they were needed, and immediately preceding the Mardi Gras processions, during which the neutral ground and all other places in St. Charles avenue are crowded with spectators."
"`If, as alleged, plaintiff fell into one of the holes made by the contractor, it was not because the work of planting the trees necessarily constituted an obstruction or defect in the street, rendering it unsafe or dangerous for pedestrians, but because of the time and manner in which the work was done — a matter over which the city and its agents had no control.' * * *
"In the instant case, the City of Shreveport could no more anticipate negligence on the part of the employees of CWA than could the City of New Orleans in the La Groue Case anticipate negligence on the part of its independent contractor." *Page 513 
To further support the court's holding in that case, Dillon on Municipality Corporations, 3d Ed., page 1030, is quoted from to this extent: "`Accordingly the later and better considered cases in this country respecting streets have firmly, and, in our opinion, reasonably, established the doctrine that, where the work contracted for necessarily constitutes an obstruction or defect in the street, of such a nature as to render it unsafe or dangerous for the purposes of public travel unless properly guarded or protected, the employer (equally with the contractor) where the injury results directly from the acts which the contractor engaged to perform, is liable therefor to the injured party.'"
The modus operandi employed by the WPA for laying the gas lines was this:
Sections of pipe would be placed end to end along a designated street; contemporaneously a trench parallel thereto fifteen inches to eighteen inches deep would be dug. The pipe after being connected and welded would then be deposited in the bottom of the trench and covered, each phase of the work keeping apace with the other. This obviated leaving trenches open or pipes on the ground for long periods, not even for a night. As the pipe in question was delivered to the Meyers' store in the afternoon of a Saturday, too late to be then laid, no effort was made to do so until the following Monday morning. It is certain none of defendant's officers or agents knew the pipe had been left at the store.
The facts of this case seem to dovetail perfectly with those of the La Groue case. There, holes for the setting of trees were dug in the neutral ground of St. Charles Avenue by the independent contractor and were left open for several days. Mrs. La Groue, while using the avenue, stepped into one of these holes and was injured. No danger to pedestrians was involved had the trees been promptly set after the holes were dug. The court in passing on the case said [114 La. 253, 38 So. 161]: "It could not have been foreseen that the contractor would cause the holes to be dug several days before they were needed * * *."
In the case at bar, defendant could not have anticipated, especially in view of its knowledge of the modus operandi of the WPA, that pipe would be left on or about the street in such way as to constitute a hazard to pedestrian travel.
We do not wish to be understood as holding that in no circumstances can a municipality be held in damages for the negligence of an independent contractor which causes physical injury to another. There are well-recognized exceptions to the rule of nonliability. It will be observed from the quotation from Dillon, supra, that it is well established that "where the work contracted for necessarily constitutes an obstruction or defect in the street, of such a nature as to render it unsafe or dangerous for * * * public travel, unless properly guarded or protected" and injury results "directly from the acts which the contractor engaged to perform", the employer is liable with the contractor for damages resulting from the contractor's negligence.
The facts of the present case do not bring it within the principle laid down by Dillon and used approvingly in the Todaro case. Here, there was no defect in the street or sidewalk which needed repairing and the WPA was not engaged to undertake work of this character. It was engaged to lay lines of gas pipe which involved no obstruction of the street or sidewalk and certainly the injury to plaintiff did not "result directly from the acts which the contractor engaged to perform." And as was also said in the La Groue case, the accident happened not because the work being performed by the contractor constituted an obstruction or defect in the street, rendering it unsafe or dangerous for pedestrians, "but because of the time and manner in which the work was done — a matter over which the city and its agents had no control."
The charge that defendant was negligent in not maintaining a light at the intersection of the street and highway apparently has been abandoned. It is not mentioned in brief submitted by plaintiff's counsel, nor discussed in oral argument. There is no merit in the charge. Unless there is statutory or charter requirement that a city or town light its streets, parks, etc., it is optional with it whether such be done. McQuillan's Municipal Corporation, Vol. 7, p. 219, Sec. 2995. The omission is not negligence. We assume that the Town of Glenmora was incorporated under Act No. 136 of 1898, as amended. Nowhere in this act is it made the duty of municipalities incorporated thereunder to maintain a system of lighting throughout its *Page 514 
territorial limits. The right to do so or to contract with others to do so is granted, but beyond this the act is silent. Lights may be placed in parts of the municipality and omitted in others without there being exposure to liability for damages to persons injured because of the absence of lights at a given place.
For the reasons herein assigned, the judgment appealed from is affirmed with costs.