MOSES SHAPIRO, ADMINISTRATOR OF THE ESTATE OF BRANTLEY MOSS, DECEASED, v. CITY OF WINSTON-SALEM AND MASTEN HAWKES.

(Filed 5 January, 1938.)

**Municipal Corporations § 13—City held not liable for injury inflicted by its truck driver while working on W. P. A. project.**

Defendant municipality sponsored a W. P. A. project for municipal park improvement and agreed to contribute a stated sum of money, and trucks and drivers for the equivalent of 400 hours, and the city retained sufficient supervision to assure that the work was done as provided in the plans and specifications furnished by the city, but the entire work was under the control of the Works Progress Administration, and its employees had exclusive control over, and directed the workers in the performance of their job, including the city truck drivers while engaged on the project. A truck driver, furnished and paid by the city, inflicted a negligent injury while operating the city's truck on the project. *Held:* The truck driver was not, at the time, an employee of the city within the meaning of the doctrine of *respondeat superior*, and the city not being liable for the injury under the doctrine, it is not necessary to determine whether the improvement of the park was a governmental function so as to absolve the city of liability in any event.

APPEAL by plaintiff from *Clement, J.,* at September Term, 1937, of FORSYTH.   Affirmed.

This is a civil action, instituted by the plaintiff to recover damages for the alleged wrongful death of his intestate, Brantley Moss. The Works Progress Administration, an agency of the Federal Government, adopted as one of its projects the improvement of Hanes' Park, which is a public park and playground owned by the city of Winston-Salem. Within the park is located an elementary school, the high school gymnasium, baseball diamond, a football field, a race track, bridges and walks, and other park improvements. It is used to a large extent as a playground connected with the elementary school and the Richard J. Reynolds High School. The W. P. A. project provided for improvements to the tennis courts and race track, three bridges, the planting of shrubbery, improvements to the football and baseball fields, improvement of about two miles of walks and paths, the terracing and improvement of a small creek and other open drains and the raising of the level of some of the land.

The city of Winston-Salem was the sponsor for the project and agreed to contribute $1,200 to the total cost of the project. As a part of its contribution the city agreed to contribute 50 truck days of eight hours each; that is to say, it agreed to furnish a truck and driver, or trucks and drivers, for an equivalent of 400 hours.

The entire work was under the control of the Works Progress Administration organization, there being an area engineer, a general foreman, and other subofficials in charge. The work was being done, however, in accord with plans and specifications furnished by the city, and city officials exercised that degree of supervision necessary to assure the city that the work was being done as provided in the plans and specifications. The city officials exercised no control over the employees doing the work. Employees furnished by it worked under the supervision and direction of the W. P. A. officials.

The defendant Masten Hawkes, an employee of the city and upon its pay roll, on 16 March, 1936, was sent with a city truck by an official of the city of Winston-Salem to report to the W. P. A. officer in charge of the project to work in compliance with the agreement of the city to furnish "50 truck days." He proceeded to work in connection with the project under the supervision and direction of the officials of the Works Progress Administration. During the course of his work he backed a truck into and against plaintiff's intestate, inflicting fatal injuries. The evidence is amply sufficient to sustain a finding that the death of plaintiff's intestate was caused by the negligence of Hawkes.

At the conclusion of all the evidence, the city of Winston-Salem renewed its motion to dismiss as of nonsuit. Thereupon the plaintiff submitted to a judgment of voluntary nonsuit as to Masten Hawkes and the court allowed the motion of the city. Judgment of involuntary nonsuit was entered as to the city of Winston-Salem, to which the plaintiff excepted and appealed.

*Hoyle C. Ripple for plaintiff, appellant.*

*Ratcliff, Hudson & Ferrell for defendant city of Winston-Salem, appellee.*

BARNHILL, J. It may be that if necessary the Court would take judicial notice of the plan under which a duly constituted agency of the Federal Government operates. In this case, however, it is not necessary for us to do so. The record sufficiently discloses the plan under which the Works Progress Administration was improving Hanes Park, which belongs to the city of Winston-Salem. The uncontradicted evidence discloses that the defendant Masten Hawkes was on the pay roll of the city of Winston-Salem at the time of the occurrence complained of, which resulted in the death of the plaintiff's intestate. It also discloses, however, that at said time he was working under the supervision, control and direction of the officials of the Works Progress Administration, and that the city was without authority to give him orders or direction as to the manner or method in which he should perform the work then

being done.  While the truck being operated by him was likewise the property of the city, the evidence also discloses that this truck was at the time in the custody of the W. P. A. and was being used under its direction.  Under these circumstances the doctrine of *respondeat superior* as between the defendant Hawkes and the city of Winston-Salem does not apply.  While it was an unfortunate occurrence, the city is in nowise liable in damages for the death of plaintiff's intestate.

As we are of the opinion that Masten Hawkes was not the servant of the city of Winston-Salem at the time he caused the death of plaintiff's intestate in the sense that would impose liability upon the city, it is unnecessary for us to discuss the question presented as to whether the improvement of Hanes Park was a governmental function such as would absolve the city in any event.

The judgment below is
Affirmed.