## DAVE LEONARD v. TATUM & DALTON TRANSFER COMPANY AND BRYANT ELECTRIC COMPANY.

(Filed 20 December, 1940.)

**1. Master and Servant § 21a—**

An employer who lends or hires an employee to another is not relieved of responsibility to third persons for the negligence of the employee unless the original employer surrenders control over the employee.

**2. Automobiles § 24e—Whether truck owner furnishing truck for hire retained control over driver so as to be responsible to third person for driver's negligence held for jury.**

The evidence tended to show that defendant transportation company furnished a truck and driver to its codefendant at a stipulated sum *per diem* to haul poles necessary in the performance of the codefendant's contract with the R. E. A., that under the agreement the codefendant furnished gas and oil and help to load and unload the poles, and designated the places to which the poles were to be unloaded, but did not direct the driver as to the routes to be taken or the time he should

report for work, that the transportation company employed and paid the driver, that the driver was in charge of the truck, and that the codefendant was without authority to hire or fire him. *Held:* Whether the relationship of master and servant existed between the transportation company and the truck driver so as to render it liable to plaintiff who was injured by the negligence of the driver, was properly submitted to the jury notwithstanding other evidence tending to support a contrary conclusion.

3. **Automobiles § 14—Questions of negligence in stopping truck on highway without lights at night and contributory negligence of motorist colliding therewith held for jury.**

The evidence tended to show that defendant's truck was loaded with telephone poles which were approximately the same color as the asphalt highway, that the poles protruded beyond the body of the truck, and that no flag or lantern was placed on the end of the poles, and that the truck was stopped on the highway at night without lights or reflectors, and that plaintiff, who had just passed a car traveling in the opposite direction and had dimmed his lights, ran his car into the rear of the truck resulting in the injuries in suit. *Held:* The questions of negligence in stopping the truck on the highway without lights at night and contributory negligence of plaintiff in colliding therewith were properly submitted to the jury.

4. **Automobiles § 24e—**

Where a defendant furnishing a truck for hire retains control over the driver so as to be liable to a third person injured by the driver's negligence in stopping the truck on the highway without lights at night, whether the truck was adequately equipped with lights when put into service under the contract is immaterial.

APPEAL by defendant Tatum & Dalton Transfer Company from *Rousseau, J.,* at 19 February, 1940, Term, of DAVIDSON. No error.

This is an action to recover damages for an injury to plaintiff alleged to have been sustained through the negligence of an employee of the defendant in the operation of a motor vehicle.

Since the appellant relies here mainly upon the refusal of the court below to grant its motion for judgment as of nonsuit, the evidence may be summarized from that point of view:

The appellant—Tatum & Dalton Transfer Company—a corporation, was the owner of tractors, trucks, and trailers, and was engaged in the transfer business in Greensboro and vicinity. The Bryant Electric Company, holding a contract with the R. E. A., entered into an agreement with the Tatum & Dalton Company under which the latter company furnished the former with a truck and driver at the price of $1.25 per hour.

In furtherance of this arrangement, Mr. Dalton, of the appellant company, hired Jones, subsequently charged with negligent operation of the truck, as driver. The truck was "picked up" at High Point, and,

with Jones in charge, put into the agreed service in Davidson County, hauling poles in connection with the construction of an electric line.

Evidence as to the agreement between appellant and the Electric Company appears in the record as follows:

"H. M. Bryant testified for plaintiff: I am president of the Bryant Electric Company. My company has a contract with the R. E. A. in this county for placing poles. Pursuant to our contract it was necessary for us to transport poles from different locations over the highways to the places where those poles were to be placed. Pursuant to our contract with the R. E. A., it was necessary for us to transport poles from different places in the county to the places where the poles were to be placed as directed. The poles are different sizes, different lengths, and different sizes in timber. They run from 25 feet to 50 feet, to the best of my knowledge. They are different classes of poles. I will say their color was black or brown."

"Well, I called Mr. Dalton and talked to him over the phone and told him that we had some poles to haul, and asked if he would furnish us a truck and man to haul these poles. He told me that he would, and the question came up about the price. I said, 'I will pay the same price I have been paying,' which was $1.25 an hour, 'and furnish the gas and the men . . .' the Bryant Electric Company to furnish the gas and Dalton was to furnish driver. That was from over here at this office, and he came over but I left the office, and turned my information over to Mr. Burgess, my superintendent; and that is what I paid Mr. Dalton is $1.25 an hour for the time he was hauling the poles."

"Well, I hired the truck to haul poles, but I was not over here, and all I can say is what my superintendent did about that. He was to direct how the hauling was to be done. I don't know that because that Mr. Burgess directed."

"We were to furnish necessary help to load the poles is what I told him. I didn't know how many men it would take and that was left entirely—I stated we were to furnish assistance to help load and unload the poles."

"We had this contract and part of our contract was to the effect that poles had to be delivered to certain places. We hired this truck and driver to haul those poles. Part of our agreement was to furnish gasoline. We furnished the gasoline. Yes, we furnished the necessary help to load the poles. I did not put this truck and driver under our superintendent. His name was Mr. Burgess. Yes, there was a Mr. Allen on the pay roll. I don't remember what he did. I know that I paid Mr. Dalton in accordance with our terms because he came by the office. It was $1.25 per hour. We didn't have this truck hauling transformers to my knowledge. We didn't have it hauling wire to my knowledge.

All that was in charge of our superintendent. So far as I know, the truck and driver did what our superintendent told him to do. I just turned it over to the superintendent, and so far as I know, the superintendent did what I said. The truck we got from Tatum & Dalton was to report at Lexington. At this time we had this R. E. A. contract."

"I did not know of my own knowledge in reference to this truck and driver as to what any of our superintendents or foremen did."

"There were maps in the office to indicate where the driver of this truck might take the poles."

The evidence as to the circumstances of plaintiff's injury is somewhat conflicting, but plaintiff's evidence tends to show that on 30 August, 1939, Jones drove the Tatum & Dalton truck to Silver Valley to get poles. Accompanying the truck were Foster Anderson, Robinson, and Curtis, employees of the Electric Company, who were there to load the poles under Jones' direction. The headlights were put on at Willomore Springs, some ten miles from where the accident took place.

While Jones testified that the truck never ceased moving until struck in the rear by plaintiff's car, other testimony was to the effect that it went dead. That there were neither lights nor lighting fixtures on the rear of the truck; no flags on the ends of the poles which projected some 16 feet over the end of the truck, and were black, like the road.

One witness said Jones gave him a paper flour sack and told him to go back and flag—that there were no reflectors on the rear of the truck. This witness, however, stated that he was trying to crank the truck when Mr. Leonard struck it. As to the truck, "It stopped right on just about the center of the highway." "The sacks would not last any more than three or four minutes, that torch he had lit. In about five minutes after that then the car hit the poles. There were no lights of any kind to the rear of that truck within five minutes to the time Mr. Leonard struck it." "The color of the road was black, the color of the poles was black . . . two and a half or two feet, off of the ground."

Sheriff Kimel testified that the road was straight for some distance, but that there was a dip down into where the car struck the truck. He also testified that there were no reflectors on the back of the truck and that there was not even a light assembly or fixture. A fixture had been broken off and the place was rusty.

The plaintiff Leonard testified that he met a car just before he ran into the truck and had put on his dimmers—that he did not see the poles, close to the ground, nor the truck at all, until he ran into it.

There was much evidence in partial contradiction. Evidence on the part of defendant Tatum & Dalton Transfer Company was to the effect that the truck was properly inspected and thoroughly equipped with lights before it was sent on the job.

There was evidence as to plaintiff's injuries.

Upon the submission of appropriate issues the jury found that Jones was not the employee of the Bryant Electric Company, but that he was the employee of the Tatum & Dalton Transfer Company, and, answering the issues of negligence and contributory negligence in favor of plaintiff, assessed the damages at $3,000.00. From the judgment thereupon defendant appealed.

*Don A. Walser for plaintiff, appellee.*
*Sapp & Sapp for defendant, appellant.*

SEAWELL, J.  A person, natural or corporate, may lend or let a servant to another in such a way as to be relieved from liability arising out of injury to another through the negligence of the servant. But to bring this about, the control of the original employer over the acts of the employee must be so completely surrendered as to virtually suspend, temporarily, at least, any responsibility which might reasonably be associated with control.

We do not find such a situation to exist in the arrangement between appellant and Bryant Electric Company. The words employed in the contract are those of hire; but Tatum & Dalton Transfer Company not only hired Jones originally, but they seem to have paid him regularly during his service, during which he was in charge of the truck continuously. It is significant that as a part of the contract Bryant Electric Company agreed to furnish gas and oil and load the logs. This looks more like a hauling contract than the simple hiring of a truck and man, when these things would not be a matter of obligation to the owner of the hired truck or of understanding with him, but the concern only of the hirer. A person may hire a truck to haul his poles, if he please, but if that is the real nature of the transaction he doesn't need to agree with the owner to furnish the gas and load the poles. The contract is susceptible to the construction that what the Tatum & Dalton Company really undertook to furnish was service and that this, not the facilities for its accomplishment, was put under control of the Bryant Electric Company, and only so far as might be necessary to accomplish the purpose of the contract. *McNamara v. Leipzig,* 227 N. Y., 291, 125 N. E., 244; Berry, Law on Automobiles, Vol. 4, p. 587; *Long v. Eastern Paving Co.,* 295 Pa., 163, 145 Atl., 71.

"Where a truck owner contracted with a highway contractor to haul gravel at a fixed price, based on yardage and mileage, and the highway contractor had no control over the operation of the truck except to fill it, while the county employed an inspector to direct the unloading, the truck owner was found to be an independent contractor." *Burns v. Eno,* Iowa, 881, 240 N. W., 209 (1932). Berry, Law on Automobiles, *supra.*

"A truck owner was an independent contractor, rather than an employee, where he was engaged to haul asphalt at an hourly rate, subject only to orders as to the asphalt to be hauled and the place of unloading." *Long v. Eastern Paving Co., supra.*

The limited control which the Electric Company exercised over Jones is apparent from the testimony of both Bryant and his superintendent, Burgess, to whom he referred for enlightenment on this point. Burgess testified: "I did not at any time direct which route of travel Mr. Jones was to take other than the written instructions set out in the working sheet. I did not direct how many poles he should haul at a load. I did not direct how many hours he should work a day. I did not direct him to work at night. I did not tell Mr. Jones what time he should report for duty in the morning nor what time he should quit in the evening. I did not require Mr. Jones to report at the office at any time as to how many poles he had delivered on a given date or where he had delivered them. . . . I did not hire Mr. Jones. I did not have the right to fire him."

While the factual situations may at points vary, the case seems to fall substantially under the rule applied in *Wagner v. Motor Truck Renting Corp.*, 234 N. Y., 31, 136 N. E., 229 (1922), as stated in Berry on Automobiles, at page 787: "Where an owner of auto trucks hires them out at a *per diem* compensation, furnishing driver, oil, gasoline and accessories, and the driver is under the control of the owner during the entire period of hire, while the bailee cannot discharge the driver, and has no authority over him except to direct the place to which he shall drive, the owner is liable for an injury caused to a third person by the negligent act of the driver occurring during the period of hire, if the bailee has not interfered with the operation of the truck."

In substantial agreement will be found *Matlack v. Chalfant,* 69 Pa. Super. Ct., 49 (1917); *Spellacy v. Hagerty Motor Trucking Co., Inc.,* 182 N. Y. Supp., 355; *Norwegian News Co. v. Simkovitch,* 182 N. Y. Supp., 595; Berry on Automobiles, Vol. 4, pp. 786-787.

Upon this evidence we are unable to say, as a matter of law, that the relation of master and servant did not exist between the appealing defendant and Jones, the driver of the truck, at the time of plaintiff's injury, or that the jury were not warranted in finding that it did exist. In one aspect of the evidence relating to the contract, the case might, as contended by the defendants, fall within the holdings of the court in *Shapiro, Admr., v. Winston-Salem,* 212 N. C., 751, 194 S. E., 479, and similar cases cited in defendants' brief. But the evidence relating to this contract is contradictory, or, at least, capable of another construction favorable to the plaintiff. *Jeffrey v. Mfg. Co.,* 197 N. C., 724, 150 S. E., 503; *Norwegian News Co. v. Simkovitch, supra; McNamara v. Leipzig, supra; Braxton v. Mendelsome,* 233 N. Y., 122, 135 N. E.,

198. See 42 A. L. R., 1421. In this situation the matter was for the jury, under proper instructions by the court, and defendants' motion for judgment as of nonsuit on this ground was properly refused. *Dickerson v. Reynolds,* 205 N. C., 770, 172 S. E., 370.

Upon the question of negligence on the part of Jones, and contributory negligence on the part of plaintiff, we could not take the case away from the jury without running into serious difficulty with rules we have promulgated in like cases. There is sufficient evidence to sustain a verdict finding negligence. *Fox v. Army Store,* 215 N. C., 187, 1 S. E. (2d), 550; *Reid v. Coach Co.,* 215 N. C., 469, 2 S. E. (2d), 578; *Newbern v. Leary,* 215 N. C., 134, 1 S. E. (2d), 384; *Gates v. Max,* 125 N. C., 139, 34 S. E., 266; *Willis v. R. R.,* 122 N. C., 905, 908, 29 S. E., 941.

It is not necessary to pass upon the question whether the evidence tends to show that the truck was inadequately equipped with lights when put into service upon the highway by appellant.

In the trial of the case, we find

No error.