Hohman et ux. *v.* Sadsbury Township, Appellant.

Argued March 25, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

reargument refused May 10, 1943.

*E. Lowry Humes,* with him *Fred C. Kiebort,* of *Humes & Kiebort,* and *Stuart A. Culbertson,* for appellant.

*J. Alfred Wilner,* with him *Arnold D. Wilner* and *John I. Kent,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, April 20, 1943:

Plaintiffs, husband and wife, instituted this action against Sadsbury Township to recover damages for personal injuries and property damage sustained in an automobile accident. The accident occurred at 4:30 p. m. on June 6, 1937, on Route 18, a State Highway, during a heavy rain. The husband plaintiff was driving. Their car, traveling in a southerly direction, and proceeding, according to plaintiffs' witnesses, at the speed of 25 miles per hour, crossed the intersection of Route 18 with Oakmont Drive, continued for a distance of 864 feet on a slight curve to the right, skidded and left the road. The vehicle passed over the berm and collided with a tree with such force, despite its moderate speed, that the front of the car was all but demolished and the wife plaintiff sustained .very severe injuries.

Although neither plaintiff offered any testimony as to the cause of the accident, the husband plaintiff testified that as he was assisting his wife to another vehicle after the collision he noticed that the surface of Route 18 was "oily". Other witnesses called on behalf of plaintiffs stated that Oakmont Drive, a township road, had been oiled or resurfaced a few days before, and that oil had been carried by automobiles from the Drive to the State Highway. Their evidence was that the greatest

quantity of this substance was at the intersection of the two roads, but that some of it extended on the right side of the Highway for some distance south of the intersection. Their testimony as to this distance, and as to the quantity of the oil on the Highway varied. One witness testified that the Highway was "slippery from the oil" between Oakmont Drive and the next intersecting road. Another witness, having said that the Highway was "oily" between those points, admitted on cross-examination that she could not remember seeing oil on its surface beyond the intersection of Oakmont Drive. A third witness said that oil extended from that intersection to the next, but that it "thinned out the farther you got away from there". A fourth said that the oil extended for 100 feet to the south of Oakmont Drive. A State Highway Department employe testified that there was a "slight condition" of oil between the two intersections. None of the witnesses testified that there was oil on Route 18 at the point where plaintiffs' car skidded.

The record does not indicate the date upon which the resurfacing of Oakmont Drive began. Apparently, in the fall of 1936, the township supervisors sponsored a Works Progress Administration project for the construction and draining of certain township roads, including Oakmont Drive. The contract or agreement between the township and the WPA is not in evidence. The testimony establishes that WPA laborers, using tools and equipment supplied by the township, first graded the road and spread it with gravel. They worked under the supervision of a WPA foreman and were paid by the WPA. A coat of oil, or liquid asphalt, was then applied by employes of the Hull Resurfacing Company, which had entered into a contract with the township to oil and roll the Drive. The terms of the contract do not appear in the record, but the evidence indicates that the Company supplied the oil and the machines used in distributing it and rolling the surface. The first coat

was applied at some time between May 28, 1937, and June 1, 1937. Another layer of gravel was spread by the WPA workmen, and three days after the first coat of oil, a second coat was applied by the Company. This was also covered with gravel, and the road was rolled by an employe of the Company. There is no evidence that any officer or employe of the township exercised any direction or supervision of the work at any time. During the oiling of the Drive barricades were erected, but these were knocked down or opened by some motorists who used the road while the construction was in progress.

Plaintiffs, in their statement of claim, alleged that the township was negligent in that it permitted its "agents, servants and employees" to apply "huge and excessive" quantities of oil to the Drive, which they knew, or should have known, would be carried onto Route 18; that it permitted "the excessive oil" to remain on the Drive "for a long period of time before the accident"; that it failed to remove excessive oil from the Drive and from the State Highway; that it posted no signs at the intersection to warn motorists of the "dangerous condition" of Route 18. The township filed an affidavit of defense denying negligence and averring that the work was performed by the Hull Resurfacing Company. Defendants thereupon, by sci. fa., brought in the Company as an additional defendant.

At the trial, the only testimony offered by plaintiffs to show negligence in the construction of the road was supplied by an expert witness, W. H. Francies. He was asked an involved hypothetical question as to whether a construction, approximating the construction used in the present case, but employing no specific quantities or qualities of gravel, would be "reasonably safe". He replied, over objection, that "it was not a *proper* method". He was then asked if there was a recognized method of preventing oil from being carried to an adjacent highway from such a road. He replied in the affirmative,

and was then permitted to testify at length as to the quantity of oil, and the quantity and quality of gravel to be used. Upon cross-examination as to his knowledge of road-building methods, he testified "I was constructing a safe road. I am not sticking to standards; I was sticking to what I thought was a safe road." The quantity of oil specified by the witness for his "safe" road was the same as that applied in the actual construction of the Drive and he admitted that he had no knowledge concerning the type or amount of gravel actually used. Asked how he had assumed that the construction of the Drive was improper without knowing the latter facts, or assuming them, he answered: "I wasn't constructing that road. I was constructing one of my own, the safe road I would put in."

The jury returned a verdict in favor of the wife plaintiff for $28,823.64, and in favor of the husband plaintiff for $452.50, against the defendant township, and found specially that there was "no negligence on the part of the Hull Resurfacing Company of Butler, Pa., additional defendant." The township's motions for a new trial and judgment n. o. v. were dismissed by the court en banc and judgment was entered for plaintiffs on the verdict. This appeal followed.

A careful reading of the record in this case leads us inevitably to the conclusion that the township's motion for judgment n. o. v. should have been granted. This conclusion rests upon two grounds: (1) that plaintiffs failed to prove negligence on the part of the township in the construction and maintenance of Oakmont Drive, and (2) that the work was performed by independent contractors for whose carelessness the township would, in any event, have had no liability.

Plaintiffs and the court below have cited numerous decisions upon the duty of municipal authorities to construct and maintain their streets and highways in a safe condition for the use of the public. These decisions have no application to the present case. Plain-

tiffs' accident occurred on a State highway, and not upon a road constructed or maintained by the township. The township had no affirmative duty to maintain Route 18 in a safe condition; it was subject merely to the negative duty not to create a dangerous condition upon that highway by wilful or negligent conduct. The question is simply, did the township breach the latter duty?

The trial judge, for no reason apparent in the record, charged the jury that oil "flowed" from Oakmont Drive to the State Highway. Plaintiffs' brief contains the same assertion. It is completely unsubstantiated by proof or inference. The testimony established merely that some oil, not, as plaintiffs suggest, "huge quantities", was *carried* onto the highway by automobiles entering from Oakmont Drive. The case is therefore entirely dissimilar to *McIntosh v. Jefferson County,* 289 N. Y. S. 917, cited by plaintiffs.

There is little or no evidence as to the amount of oil that was carried upon Route 18 by the tires of automobiles. As to the condition of the highway the testimony of plaintiffs' witnesses is vague and contradictory. They agree only upon the fact that the greatest amount of oil was found, as might be supposed, at the immediate intersection of the roads. Plaintiffs' car, however, left the road at a distance of 864 feet, 288 yards, from the intersection. No witness testified that there was oil at the point where it skidded and left the road.

But even if it be assumed that the presence of oil on the highway was the proximate cause of plaintiffs' injuries, which is most doubtful, no negligence on the part of the township was established. There was no proof that the resurfacing of the Drive was done in a negligent manner. The only testimony offered, that of the witness Francies, fell far short of such proof. The hypothetical question, several times amended, which he answered, made no reference to the type or quality of gravel used in the construction of the hypothetical road which he condemned as unsafe, yet he admitted that

these factors were essential considerations. The question did not refer to any type or quality of oil, although the witness stated that there were four or five grades employed in highway work. Finally, he was permitted to construct for the jury an ideal, safe road, without regard to standard methods of construction—"the safe road I would put in." Obviously such testimony was without value, and, in fact, established no negligence in the type or method of construction employed in resurfacing the Drive. See *Reed v. Tarentum Boro,* 213 Pa. 357.

The evidence indicates that while the road was being resurfaced and the oil applied, access to the oiled portion was barred by WPA flagmen; that barricades were erected by the WPA, and road construction signs posted. The fact that some motorists disregarded the barricades, opened them, or knocked them down, cannot impose any liability for their conduct on the township. It was not required to maintain guards over the barricades day and night to prevent cars from passing over the road onto the State Highway. Even assuming that the passage of such cars created a dangerous condition upon Route 18, plaintiffs' evidence fails to show that this condition was known to the township, or that it existed for a sufficiently long period to warrant a presumption or inference that the township knew of it. In any event, plaintiffs have not suggested by what authority the township officers should have placed signs along the State Highway, warning motorists on that highway that a dangerous condition existed upon it. Certainly no duty to do so was established.

Plaintiffs' evidence merely showed that on a day of heavy rain and poor visibility, their car, travelling at a moderate rate of speed, skidded and left the State Highway upon which it was being driven, 864 feet from the intersection of a township road which had recently been oiled, and from which some oil had been tracked into the highway. Certainly the testimony established no

negligence upon the part of the township which caused their injuries nor was it sufficient to justify the jury in inferring such negligence or causation. The verdict cannot be founded upon conjecture.

In addition to the fact that plaintiffs failed to sustain their burden of proof that their injuries were caused by the negligent construction of Oakmont Drive, they also failed to prove that this work was performed by the township. It clearly appears from the record that the Hull Resurfacing Company acted as an independent contractor in oiling and rolling the Drive. No supervision over its employes or of the manner in which the work was performed was exercised by the township. The Company was paid the contract price for its labor and materials. The men employed were hired and paid by the Company and, as has been stated, the jury found this company was not negligent. Similarly, the township exercised no control or supervision over the workmen of the WPA. They were responsible to their WPA foreman; they were paid by the WPA. The township supplied the materials which they used and their equipment, but it had no direction over them or over the methods used by them in performing their work. The fact that in sponsoring the road projects the township specified the roads to be improved, and the materials to be used, does not alter the conclusion that the WPA occupied the position of an independent contractor with the township. See *Shapiro v. City of Winston-Salem et al.,* 212 N. C. 751, 194 S. E. 479; *Benoit v. Hathaway,* 38 N. E. (2d) 329 (Mass.); *Todaro v. City of Shreveport et al.,* 187 La. 68, 174 So. 111. Therefore, if there had been negligence in the performance of this work, the township would have had no liability for the resulting injuries to plaintiffs. It must be borne in mind that plaintiffs were not injured on the township road, which it was the duty of the township to maintain in a reasonably safe condition for public use, but a State Highway as to which the township had no such duty of maintenance.

Giving plaintiffs the benefit of every fact proved and of every reasonable inference from the evidence, we are satisfied that the verdict of the jury cannot be sustained, and that judgment n. o. v. should have been entered for the defendant township by the court below.

The judgment is reversed and is here entered for the appellant on the whole record.