GUY ROLLISON v. ALFRED HICKS.

(Filed 2 February, 1951.)

**1. Automobiles § 12a—**

The fact that a vehicle is being driven within the statutory speed limit does not render the speed lawful when by reason of special hazards the speed is greater than is reasonable and prudent under the existing conditions. G.S. 20-141.

**2. Automobiles § 18h (2)—Evidence of excessive speed resulting in injury to person riding on back of truck body held for jury.**

The evidence, considered in the light most favorable to plaintiff, tended to show that the truck in question, equipped with side railing extending backwards only about five feet, was loaded with cement blocks on the bottom, on top of which were loaded doors and windows, that plaintiff employer, who had been driving the truck at a speed not exceeding twenty-five miles per hour, mounted the rear of the truck, and stood on the four feet left vacant of load, to hold the windows, instructing the employee to drive slowly, and that the employee accelerated the speed to forty miles per hour over a rough and bumpy highway with which he was familiar, so that when the truck hit a ridge five inches high, the impact hurled one of the unfastened doors against plaintiff, knocking him from the rear of the truck to his injury. *Held:* Whether the employee drove the truck at a speed greater than was reasonable and prudent under the conditions, and whether such speed was a proximate cause of the injury to plaintiff, were questions of fact for the determination of the jury.

**3. Negligence § 17—**

Contributory negligence is an affirmative defense which defendant must plead and prove. G.S. 1-139.

**4. Negligence § 19c—**

Nonsuit on the ground of contributory negligence is proper only when this defense is established by plaintiff's own evidence as the sole inference that can reasonably be drawn therefrom.

**5. Automobiles § 18h (3)—Evidence held insufficient to show contributory negligence as a matter of law on part of employer in standing on rear of truck carrying loose load.**

The evidence tended to show that plaintiff employer stood on the four feet at the rear of the truck left vacant after the truck had been loaded with cement blocks upon which had been placed doors and windows. The side railings of the truck extended backward only five feet, and the employer stood at the back to hold the windows, and instructed the employee-driver to drive slowly. The driver accelerated to forty miles per hour over a rough and bumpy highway. The cab of the truck was closed against the cold so that the employer could not protest against such speed. The impact of the truck against a five-inch elevation in the highway caused one of the unfastened doors to be hurled against plaintiff, knocking him to the highway. *Held:* Plaintiff was not guilty of contributory negligence as a matter of law, and the employee-driver's motion to nonsuit on this ground was properly denied.

**6. Master and Servant § 1—**

 A person performing work for hire under the supervision and control of another becomes the servant of such other in the performance of the work.

**7. Master and Servant § 20½—**

 The doctrine that the negligence of the employee will be imputed to the employer does not apply in an action by the employer to recover for injury sustained by reason of the negligence of the employee, the doctrine of imputed negligence being applicable upon such relationship only in regard to the employer's liability to third persons and in regard to contributory negligence when the employer seeks to recover for the negligent act of a third person.

**8. Automobiles § 20b—**

 The doctrine that where the driver and the passenger are engaged in a joint enterprise, the negligence of the driver will be imputed to the passenger, applies only in regard to third persons and not in regard to their liability between themselves.

BARNHILL, J., dissenting.

APPEAL by defendant from *Bone, J.,* and a jury, at the May Term, 1950, of PAMLICO.

Civil action by employer against employee to recover damages for personal injury allegedly caused by actionable negligence of the employee in the operation of a motor vehicle in which the employer was riding.

The plaintiff's complaint and testimony make out this case:

1. On 21 February, 1949, which was a cold and somewhat windy day, the plaintiff, Guy Rollison, as the managing partner in a firm known as the Bayboro Hardware Company, received an order from a customer in a rural section of Pamlico County, for some concrete blocks, doors, and windows. Inasmuch as the partnership had no conveyance, the plaintiff rented a motor truck from J. W. Cowell, and employed the regular driver of such vehicle, the defendant Alfred Hicks, and his helper, Marcellus Cobb, to assist him in loading, transporting, and delivering the building materials. The plaintiff had the right to control the defendant and his helper in the performance of these tasks.

2. The body of the truck consisted of an enclosed cab for the driver, and an open platform at the rear for the load. The platform was fourteen feet in length, and was equipped with side railings extending backwards from the cab for a distance of about five feet. The vehicle was loaded under the supervision of the plaintiff. The concrete blocks, which weighed forty pounds each and comprised two-thirds of the load, were stacked at the bottom, and the doors and windows were placed on them with "the doors up to the front and the window sashes back in the center." The doors and windows simply rested on the blocks, and were not fastened to the truck in any way. The entire load weighed about three

tons, and covered the fore part of the platform, leaving a space four feet long vacant at the rear. The cab, the side railings, and the load were approximately equal in height, for they "came up a little above" the plaintiff's waist when he stood upon the platform of the truck.

3. The route from Bayboro to the place for delivery to the customer included a stretch of Highway 55, where the stress of traffic and weather had cracked the paved roadway in innumerable places. As a result, the surface of the highway was rough. At a point just east of the Alligator Creek bridge, the bursting of the pavement and subsequent efforts to repair the resulting crevice with an asphaltic composition had created an elevated ridge five inches high and eighteen inches wide extending across the entire traveled portion of the highway. There were "similar patches all up and down the road."

4. Both the plaintiff and the defendant had knowledge of the uneven surface of the roadway described in the preceding paragraph. On nearing the beginning of the rough stretch of highway, the plaintiff, who had been driving at a speed not exceeding 25 miles an hour, brought the truck to a halt, alighted, and inspected the load. He concluded that "the windows could easily fall and break," and decided to ride on the vacant space at the back of the platform for the purpose of steadying the windows and preventing them from falling. He thereupon entrusted the further driving of the truck to the defendant with the positive order "to drive slow."

5. When they entered upon the rough stretch of Highway 55, the defendant was driving the truck, Marcellus Cobb was sitting beside him on the seat of the cab, and the plaintiff was riding on the vacant space at the back of the platform to steady the windows and prevent them from falling. The cab was tightly closed to keep out the cold. The defendant accelerated the truck to a speed of 40 miles an hour. The plaintiff could not protest against such speed or order the defendant to reduce it because the closed state of the cab and the noise of the moving vehicle and wind made communication between plaintiff and defendant a physical impossibility. While the truck was being driven by the defendant over the bumpy roadway at a speed of 40 miles an hour, it struck the elevated ridge just east of the Alligator Creek bridge with a resounding thump actually heard at least 200 yards away. The impact of the truck and elevated ridge hurled one of the unfastened doors against the plaintiff, knocking him from the rear of the truck to the paved road and inflicting upon him lasting personal injuries of a most disabling and painful character.

The defendant answered, denying actionable negligence on his part and pleading contributory negligence on the part of the plaintiff. He offered testimony to sustain his allegations.

Issues were submitted to, and answered by the jury as follows:

1. Was the plaintiff injured by the negligence of the defendant as alleged in the complaint? Answer: Yes.

2. Did the plaintiff, by his own negligence, contribute to his own injury, as alleged in the answer? Answer: No.

3. What damages, if any, is plaintiff entitled to recover? Answer: $18,000.00.

Judgment was rendered on the verdict, and the defendant appealed, assigning the refusal of the court to nonsuit the action and various other rulings as error.

*Bernard B. Hollowell and Rodman & Rodman for plaintiff, appellee.*

*Barden, Stith & McCotter for defendant, appellant.*

ERVIN, J. The exception to the refusal of the trial court to dismiss the action upon a compulsory nonsuit raises this question at the threshold of the appeal: Was the evidence introduced by plaintiff at the trial sufficient to carry the case to the jury, and to support its finding on the first issue, *i.e.,* that the plaintiff was injured by the actionable negligence of the defendant?

The plaintiff's case is predicated on the theory that the defendant drove the truck at an excessive speed in a place outside a business or residential district, and thereby proximately caused personal injury to the plaintiff.

The testimony shows that the defendant did not exceed the absolute speed limit of forty-five miles per hour fixed by the statute for the truck in the place where it was being driven. G.S. 20-141 as rewritten by Section 17 of Chapter 1067 of the 1947 Session Laws. This fact is not sufficient of itself, however, to exonerate the defendant from liability to the plaintiff. The statute cited expressly provides that "the fact that the speed of a vehicle is lower than the foregoing limits shall not relieve the driver from the duty to decrease speed . . . when special hazard exists . . . by reason of . . . highway conditions," and that "no person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing."

When the evidence adduced by plaintiff at the trial is appraised in the light most favorable for him, it warrants these inferences: That the surface of Highway 55 was rough and bumpy, rendering the road hazardous for occupants of motor vehicles proceeding thereon at ordinary speeds. That the defendant knew the hazardous condition of the highway and that his employer, the plaintiff, was riding on the platform of the truck to steady its unfastened load. That the defendant was ordered by plaintiff "to drive slow." That notwithstanding his knowledge of the

condition of the road and of the position of the plaintiff, and notwithstanding the order to proceed slowly, the defendant drove the truck over the rough and bumpy road at a speed of forty miles per hour when he knew, or by the exercise of reasonable care would have known, that such speed in combination with the uneven surface of the highway was likely to occasion injury to the plaintiff. That the defendant did thereby in fact cause injury to the plaintiff.

This being true, whether the defendant drove the truck on the highway at a speed greater than was reasonable and prudent under the conditions then existing, and whether such speed was the proximate cause of injury to the plaintiff were questions of fact for the determination of the jury. *Howard v. Bell,* 232 N.C. 611, 62 S.E. 2d 323; *Perry v. McLaughlin,* 212 Cal. 1, 297 P. 554; *Richard v. Roquevert* (La. App.), 148 So. 92; *Anderson v. Anderson,* 188 Minn. 602, 248 N.W. 35; *Morgan v. Krasne,* 284 N.Y.S. 723, 246 App. Div. 799; *Meath v. Northern Pac. Ray. Co.,* 179 Wash. 177, 36 P. 2d 533.

The exception to the refusal of the motion for nonsuit likewise raises this question: Was the plaintiff guilty of contributory negligence barring his recovery as a matter of law?

The test for determining whether the question of contributory negligence is one of law for the court or one of fact for the jury is restated in the recent case of *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307, where this is said: "Contributory negligence is an affirmative defense which the defendant must plead and prove. G.S. 1-139. Nevertheless, the rule is firmly embedded in our adjective law that a defendant may take advantage of his plea of contributory negligence by a motion for a compulsory judgment of nonsuit under G.S. 1-183 when the facts necessary to show the contributory negligence are established by the plaintiff's own evidence. . . . A judgment of involuntary nonsuit cannot be rendered on the theory that the plea of contributory negligence has been established by the plaintiff's evidence unless the testimony tending to prove contributory negligence is so clear that no other conclusion can be reasonably drawn therefrom. . . . If the controlling or pertinent facts are in dispute, or more than one inference may reasonably be drawn from the evidence, the question of contributory negligence must be submitted to the jury."

When the plaintiff's testimony is laid alongside this test, it is manifest that the question whether plaintiff was contributorily negligent was one of fact for the jury, and not one of law for the court. *Graham v. Charlotte,* 186 N.C. 649, 120 S.E. 466; *Crane Co. v. Mathes,* 42 F. 2d 215; *Agnew v. Wenstrand,* 33 Cal. App. 2d 21, 90 P. 2d 813; *Chapman v. Pickwick Stages System,* 117 Cal. App. 560, 4 P. 2d 283; *Wirth v. Pokert,* 19 La. App. 690, 140 So. 234; *Nichols v. Rougeau,* 284 Mass. 371, 187

N.E. 710; *Breger v. Feigenson Bros. Co.,* 264 Mich. 37, 249 N.W. 493; *Clifton v. Caraker* (Mo. App.), 50 S.W. 2d 758.

The evidence does not compel the single conclusion that the plaintiff had actual control and direction of the operation of the truck at the time of the accident, and in consequence participated in any negligence of the defendant in its management. It justifies the opposing inference that the defendant drove the truck over the rough and bumpy highway at an excessive speed in violation of the positive command of the plaintiff "to drive slow," and that the relative positions of the parties in the vehicle robbed the plaintiff of the physical power to protest against such speed or to order the defendant to reduce it.

Furthermore, the testimony does not impel the sole deduction that it was necessarily negligent for the plaintiff to fail to fasten the building materials to the truck, and to ride on the vacant place at the rear of the truck to prevent the windows from falling and breaking. It supports these contrary inferences: That there was no practical way to fasten the concrete blocks, doors, and windows to the platform of the truck; that the plaintiff reasonably anticipated that the concrete blocks and doors would be held in place by gravity, and that he could ride on the rear of the platform and prevent the windows from falling and breaking without substantial risk to himself provided the truck should be driven at a proper speed; that he ordered the defendant to drive the truck slowly, and reasonably anticipated that his order would be obeyed; that the plaintiff took no risk in loading the truck or in riding thereon beyond that inherent in the ordinary activities of the business in which he was engaged; and that the unanticipated and disobedient act of the defendant in driving the truck at an excessive speed was the sole proximate cause of the plaintiff's injury.

The third question posed by the appeal is whether the negligence of the defendant is imputable in law to the plaintiff so as to bar the plaintiff from suing the defendant for his personal injury. This problem arises on the exception to the refusal of the motion for nonsuit, an exception to the denial of a request for instruction, and a demurrer *ore tenus.*

The defendant insists initially on this phase of the litigation that the defendant operated the truck as a servant of the plaintiff, and that any negligence on his part in the management of the truck is imputable in law to his master, the plaintiff, and defeats this action.

When J. W. Cowell furnished his truck with its driver, the defendant, to the plaintiff for the performance of the latter's work, he placed the defendant under the control of the plaintiff. As a consequence, the defendant became the servant of the plaintiff while performing the plaintiff's work. *Leonard v. Transfer Co.,* 218 N.C. 667, 12 S.E. 2d 729; *Shapiro v. Winston-Salem,* 212 N.C. 751, 194 S.E. 479.

The doctrine of imputed negligence visits upon one person legal responsibility for the negligent conduct of another. It applies, however, only in limited classes of cases. In its application to the law of master and servant, it appears in these two rules:

1. The master is liable to a third person for an injury caused by the actionable negligence of his servant acting within the scope of his employment. *Dickerson v. Refining Co.,* 201 N.C. 90, 159 S.E. 446; 35 Am. Jur., Master and Servant, sections 532, 543; Michie: The Law of Automobiles in North Carolina (3d Ed.), section 139.

2. The master is barred from recovery from a negligent third person by the contributory negligence of his servant acting within the scope of his employment. *Hampton v. Hawkins,* 219 N.C. 205, 13 S.E. 2d 227; 38 Am. Jur., Negligence, section 236; Am. Law Inst. Restatement, Torts, Vol. 2, section 486.

The doctrine of imputed negligence has no application, however, to actions brought by the master against the servant to recover for injuries suffered by the former as a result of the latter's actionable negligence. *Branch v. Chappell,* 119 N.C. 81, 25 S.E. 783; *Shaker v. Shaker,* 129 Conn. 518, 29 A. 2d 765; *Donohue v. Jette,* 106 Conn. 231, 137 A. 724; *Rosenfield v. Matthews,* 201 Minn. 113, 275 N.W. 698; *Darman v. Zilch,* 56 R.I. 413, 186 A. 21, 110 A.L.R. 826, and cases collected in the ensuing annotation; Michie: The Law of Automobiles in North Carolina (3d Ed.), section 58; 65 C.J.S., Negligence, section 161.

These differing applications of the doctrine of imputed negligence are clearly understandable if due heed is paid to a fundamental truth. One of the basic concepts of our jurisprudence is embodied in the ancient Latin maxim *ratio legis est anima legis; mutata legis ratione, mutatur et lex,* meaning "reason is the soul of law; the reason of law being changed, the law is also changed."

Inasmuch as the master undertakes to manage his affairs through his servant, it is just that he be charged in law with the negligent conduct of his servant acting within the scope of his employment where the rights or liabilities of third persons are involved. But it would offend justice and right to impute the negligence of a servant to his master and thus exempt him from the consequences of his own wrong-doing where the negligence proximately causes injury to a master who is without personal fault.

The defendant contends secondarily on the present phase of the controversy that he and the plaintiff were engaged in a joint enterprise in the operation of the truck, and that any negligence on his part in its management is imputable in law to his fellow adventurer, the plaintiff, and defeats this action.

The legal standing of the defendant is not improved a whit by the assumption that he and the plaintiff were engaged in a joint enterprise

in the operation of the truck; for the relevant legal rule in such case is as follows: "The doctrine of joint enterprise whereby the negligence of one member of the enterprise is imputable to others, resting as it does upon the relationship of agency of one for the other, does not apply in actions between members of the joint enterprise and does not, therefore, prevent one member of the enterprise from holding another liable for personal injuries inflicted by the latter's negligence in the prosecution of the enterprise. In other words, the doctrine of common or joint enterprise as a defense is applicable only as regards third persons and not parties to the enterprise. Ordinary negligence on the part of a member of a joint enterprise, resulting in injury to the other member, renders him liable for the injury." 38 Am. Jur., Negligence, section 238. See, also, these accordant authorities: *Legerwood v. Legerwood,* 114 Cal. App. 538, 300 P. 144; *Mencher v. Goldstein,* 269 N.Y.S. 846, 240 App. Div. 290; *Smith v. Williams,* 180 Or. 626, 178 P. 2d 710, 173 A.L.R. 1220; 65 C.J.S., Negligence, section 158; Blashfield: Cyclopedia of Automobile Law and Practice (Perm. Ed.), sections 2373, 2868.

The legal questions presented by the remaining exceptions have been decided adversely to defendant in well considered precedents, and require no discussion.

The judgment of the Superior Court will not be disturbed; for there is in law

No error.

BARNHILL, J., dissenting: I concur in the conclusion that the doctrine of imputed negligence has no application here. The record, however, leads me to disagree on the question of contributory negligence of the plaintiff. He was familiar with the condition of the road. He had charge of and supervised the loading of the truck. He knew that loose, unfastened doors and windows were on the top of the load, unprotected by any railing, and were likely to slip and slide about as the truck progressed. With this knowledge he voluntarily assumed a standing position on a restricted area of the rear of the truck platform with nothing to hold to or lean against except the loose windows he was attempting to keep from falling. The position he thus assumed was obviously dangerous, and he assumed the risk incident thereto. His unfortunate injuries grew out of those risks and resulted, in part at least, from his own failure to exercise proper care for his own safety.

A review of plaintiff's own testimony, it seems to me, demonstrates the soundness of this conclusion. He himself testified to facts in substance as follows:

The truck was loaded under his supervision. The concrete blocks, shingles, and composition roof were at the bottom. Six or seven doors

and about fifteen windows were on the top, the doors being to the front and the windows to the rear. The doors and windows were not fastened because he had no rope with which to tie them. The railings of the truck extended back from the cab only about one-third the length of the truck platform so that there was no railing or other protection where the windows were loaded and he was standing.

He knew that the doors and windows were unfastened and were likely to shift about and fall off. That is the very reason he assigned for assuming an insecure position on the truck platform. "We didn't have any rails around the truck, and I knew the windows could easily fall and break; we didn't have any rope to tie the load on, and so I . . . decided I would get off and hold the windows on."

While he testified defendant drove about 25 m.p.h. until he passed through Stonewall and then speeded up, this is not his full testimony in respect of the speed. He testified that he estimated the speed at the time the truck hit the "bump" at about 40 m.p.h.; he was not disturbed by defendant's driving other than the wind was blowing rather fast and getting in his face, and he had tears in his eyes and was getting cold; there was nothing unusual in the way the truck was being operated; the load was not jumping up and down for he had not been going fast enough for that.

The plaintiff was familiar with the road and knew it was rough. The "bump" in the road was not a sharp ridge. It was flat, being about 15 or 18 inches wide and several inches high, formed by the repair of a break in the pavement.

The wind was blowing, and it was the wind which caused the untied door and windows to strike plaintiff. When the truck passed over the bump "the wind caught up under one of those doors and lifted it like this and sailed it back on me. . . . The windows sailed onto me and knocked me off backwards on the hard surface road." It requires a liberal construction of this testimony to support a finding that defendant was guilty of any act of negligence which proximately caused plaintiff's injuries. Grant negligence on the part of the defendant and the fact remains that plaintiff, with full knowledge of all the facts, assumed a standing position on a narrow ledge of the platform of an overloaded truck when he had nothing to which he could hold or balance himself other than the loose windows he was attempting to hold in place.

The general rule is stated in *Smith v. Mills Co.,* 238 S.W. 573, as follows: "Where a person voluntarily assumes a position of imminent danger when there is at hand and accessible to him a place of safety, and by reason of having taken the dangerous position he is injured, he can have no recovery against another who is also negligent because such person's negligence in taking the dangerous position is one of the direct and

proximate causes of the injury and contributes thereto. In such cases it becomes the duty of the court to direct a verdict."

A person who, by his own act, subjects himself unnecessarily to danger, violates the duty imposed upon all men to exercise ordinary care for their own safety. *Terminal Co. v. Hancock,* 78 N.E. 964, 6 L.R.A. ns 997, 38 A.J. 859. One cannot voluntarily put it out of his power to use due care to protect himself and then recover from others for the consequences. *Covington v. Lee,* 89 S.W. 493, 2 L.R.A. ns 481. One who rashly and unnecessarily exposes himself to danger cannot recover for injuries thus brought upon himself. *Norris v. R. R.,* 152 N.C. 505.

The combination of facts and circumstances which invoke the application of the same principle of law are sometimes as variable as the wind. My search has disclosed two cases substantially similar. Factually neither is quite so conclusive as. here; yet both are in point. In *Crider v. Coke Co.,* 89 So. 285, the plaintiff was riding on the platform of defendant's truck in a standing position, with his arm on the top of the cab. The truck ran into a hole in the road and plaintiff was thrown out and injured. The court concluded he was guilty of contributory negligence as a matter of law. In *Zavodnick v. Rose & Son,* 146 A. 455, one Zavodnick was standing on the open platform of a truck, holding or "hanging" to a stake or stanchion. A wheel of the truck struck a depression some six inches in depth. He was thrown to the pavement, receiving injuries which caused his death. Plaintiff, the widow, sued and recovered in the lower court. On appeal the Court reached the same conclusion as in the *Crider case* and reversed on that and other grounds.

In the instant case there were the additional dangers of restricted space in which to stand, the loose window sash on top of the load, and the nearness to the open, unprotected rear of the platform.

This is not a case where an employee was directed or, in the course of his employment, was required to assume a position of great hazard. If it were, I might be inclined to a different conclusion, for in such cases it is sometimes difficult to appreciate or to appraise the economic pressure which compels a wage earner, in discharging his duties, to assume risks his better judgment tells him he should avoid.

The plaintiff was in full charge. He was the master. He knew the load should be fastened but he did not have the necessary rope and did not care to take the time to procure it. Instead, with full knowledge of the hazards he himself had created and being aware that the road to be traveled was rough, he voluntarily left a place of safety and assumed a precarious position, the attendant hazards of which must have been apparent to any man of ordinary prudence. *Atkins v. Transportation Co.,* 224 N.C. 688. He thus put it out of his power to use due care to protect himself. In my opinion the question of contributory negligence

should be resolved against him. *Bailey v. R. R.,* 223 N.C. 244; *Daughtry v. Cline,* 224 N.C. 381; *Bundy v. Powell,* 229 N.C. 707. I therefore vote to reverse.