69 S.E.2d 227 (1952)
235 N.C. 132
HODGE et ux.
v.
McGUIRE et al.
FINGLETON
v.
McGUIRE et al.
No. 738.
Supreme Court of North Carolina.
February 27, 1952.
*228 Spears & Hall, and Marshall T. Spears, Jr., all of Durham, for plaintiffs, appellees.
R. M. Gantt and Fuller, Reade, Umstead & Fuller, all of Durham, for defendants, appellants.
*229 JOHNSON, Justice.
The only exceptions brought forward on this appeal relate to the refusal of the trial court to allow the defendants' motion for judgment of nonsuit. G.S. § 1-183.
It is not necessary for us to discuss the evidence bearing on the question of negligence as to Haley, the operator of the bulldozer. This is so for the reason it seems to be conceded, and rightly so, that while the evidence was sharply conflicting on this phase of the case, nevertheless there was substantial evidence tending to support the inference that Haley was chargeable with actionable negligence. With the issue of negligence thus eliminated, the single question presented by this appeal is whether the evidence was sufficient to support the inference that Haley was the servant of McGuire, the owner of the bulldozer, at the times laid in the complaint, so as to fix McGuire with liability under application of the principle of respondeat superior.
The question thus presented has to do with the doctrine of lent or hired servant,and specifically with the principles governing the fixing of liability where the general employer furnishes to a third party a mechanical instrumentality, manned by operator, and damage ensues as a result of the negligence of the operator under circumstances which raise the question of liability as between the original master and the hirer. In such cases, the usual test of liability is whether in the mechanical operation of the instrumentality the servant continues subject to the control or right of control of his general employer, or becomes subject to that of the person to whom he is hired. 57 C.J.S., Master and Servant, § 566. This is so for the reason that the controlling characteristic of the master and servant relation is the possession by the employer of the right to direct and control the manner in which the work shall be performed, i. e., the right to determine not merely the result sought, but the right to direct and control the physical methods and processes by which such result is to be accomplished. 56 C.J.S., Master and Servant, § 2; Restatement of the Law, Agency, Sections 220 and 227. And by the decided weight of authority the retention of the right or power to exercise such control is quite as determinative of the relation of master and servant as is the actual exercise of control. 56 C. J.S., Master and Servant, § 2; 57 C.J.S., Master and Servant, § 566; Restatement of the Law, Agency, Sections 220 and 227; Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480; Bartolomeo v. Charles Bennett Contracting Co., 245 N.Y. 66, 156 N.E. 98; Peters v. United Studios, 98 Cal.App. 373, 277 P. 156; Pennsylvania Smelting & Refining Co. v. Duffin, 363 Pa. 564, 70 A.2d 270, 17 A.L. R.2d 1384; Driscoll v. Towle, 181 Mass. 416, 63 N.E. 922; Little v. Hackett, 116 U.S. 366, 6 S.Ct. 391, 29 L.Ed. 652; 35 Am. Jur., Master and Servant, Sections 18 and 541; 60 C.J.S., Motor Vehicles, § 436, pp. 1089 and 1090. See also Leonard v. Tatum & Dalton Transfer Co., 218 N.C. 667, 12 S.E.2d 729.
An examination of the record discloses conflicting evidence bearing on the crucial question of whether the general employer, McGuire, retained control or right of control over Haley, the operator of the bulldozer. It may be conceded that the evidence favorable to the defendants was sufficient to have sustained a jury-finding in their favor. However, as bearing upon the question of nonsuit, these phases of the evidence, tending to support the plaintiffs' theory of the case, come into focus: (1) The bulldozer was owned by McGuire. (2) It was furnished by him, manned by operator. (3) Haley, the operator, was in the general employ of McGuire, and had been for 25 years, during which time he gained considerable experience in removing trees and clearing land with bulldozers. (4) McGuire was engaged in the general construction and contracting business, in which he owned and operated a number of bulldozers, and on two previous occasions his bulldozers had cleared land for Hodge under similar arrangements. (5) Proctor, manager of McGuire's contracting business, testified that in sending Haley with the bulldozer to the Hodge farm, he told him "to go out there and clear the land and do anything that Mr. *230 Hodge wanted him to do." (6) The work had been underway on the Hodge farm three or four weeks when the mishap occurred. During this time Haley cleared about nine acres of land, and Hodge had no one supervising or directing the work. He himself worked in Durham daily and went back and forth mornings and evenings. While the work was in progress, sometimes he would come home early in the afternoon and go where Haley was working. He would point out to Haley where he wished trees removed and land cleared, but there is no evidence tending to show he gave Haley any directions as to the mechanical operation of the bulldozer. (7) Hodge was not present when the mishap occurred. The previous afternoon he pointed out to Haley the trees he wished removed from the yard, but he left early the next morning for his office in Durham before Haley started work. (8) After the tree fell on the house, Haley phoned the office "and Mr. McGuire sent" one of his foremen out with a crane and with it the tree was removed from the house. (9) Thereafter, Haley continued to work in the yard and removed another tree.
This evidence, when considered with the rest of the evidence in the case, is sufficient to justify these inferences: (1) that the work which was being performed by Haley at the time of the mishap was in McGuire's regular line of business; (2) that Hodge was neither qualified to direct mechanical operations of the bulldozer, nor assumed to do so; whereas Haley was an experienced, skilled operator; and (3) that it was contemplated by the parties when the rental contract was made that the operator of the bulldozer furnished by McGuire should remain subject to his exclusive control in the performance of the work on the Hodge premises, and that the operator did in fact so remain subject to his control while the work was in progress.
It is true the record discloses that no one from the McGuire organization visited the premises in the role of supervisor while the work was in progress (with the exception of a trip by Manager Proctor to arrange for fuel). This, however, is not of controlling importance on the question of nonsuit, especially so since it was made to appear that Haley was a trained bulldozer operator, with considerable previous experience in removing trees and clearing land. In this respect the evidence is sufficient to support the inference that McGuire deemed Haley qualified to perform the work at hand without special supervision; and the fact that none was exercised by McGuire or any of his foremen does not preclude the inference that full right of control over the mechanical operation of the bulldozer by Haley still reposed in McGuire. In fact, this phase of the evidence is illustrative of the soundness of the rule that possession of the right to exercise control over the servant may be quite as determinative of the relation of master and servant as is the actual exercise of such control. Here it is readily inferable that Haley, having attained, in the service and under the tutelage of his regular master, a degree of skill that caused the master to intrust to him the operation of the bulldozer without special supervision, remained at all times while on the Hodge job under the regular employer's power of control.
Also, we have given consideration to the evidence tending to show that Hodge spent considerable time on the premises while the land-clearing project was underway, and that he pointed out to Haley trees and stumps to be removed and directed him regarding the areas to be cleared. Here, however, it is significant that Hodge gave no direction or instruction as to the mechanical operation of the bulldozer. And, by the great weight of authority, it is held that "a servant of one employer does not become the servant of another for whom the work is performed merely because the latter points out to the servant the work to be done, or supervises the performance thereof, or designates the place and time for such performance, or gives the servant signals calling him into activity, or gives him directions as to the details of the work and the manner of doing it, * * *." 57 C.J. S., Master and Servant, § 566, pp. 287 and 288.
The following cases illustrate the practical soundness of the doctrine of right of *231 control over the servant, as distinguished from the actual exercise of such control by the master, as a criterion for establishing the existence of the relation of master and servant in fixing tort liability under the principle of respondeat superior. Standard Oil Co. v. Anderson, supra; Driscoll v. Towle, supra; Pennsylvania Smelting & Refining Co. v. Duffin, supra; Peters v. United Studios, supra; Bartolomeo v. Charles Bennett Contracting Co., supra; Little v. Hackett, supra. These cases also illustrate the necessity of discriminating between acts of the hirer which denote authoritative control over the servant, as distinguished from mere suggestions in respect to details which amount to no more than incidental or necessary co-operation, such as pointing out the work to be performed.
In Standard Oil Company v. Anderson, supra, 212 U.S. 215, 29 S.Ct. 252, 254, 53 L.Ed. 480, the plaintiff Anderson sued the oil company for personal injuries alleged to have resulted from the negligent operation of a steam winch used in loading a vessel. The plaintiff was a longshoreman employed by a master stevedore. The stevedore, under contract with the oil company, was loading the vessel for it. The ship was alongside a dock belonging to the oil company. Cases of oil were conveyed by the winch from the dock to the hatch by hoisting them from the dock to a point over the hatch, whence they were guided and lowered into the hold of the ship, where the plaintiff was working, out of sight of the operator of the winch. The tackle and ropes used with the winch were furnished by the stevedore, but the winch and drum were owned by the oil company and stationed on its dock by the side of the ship. All the work of loading was done by the employees of the stevedore, except the operation of the winch. This was done by a winchman in the general employ of the oil company, who paid his wages. The stevedore paid the oil company $1.50 a thousand for this hoisting service. The winchman in hoisting and lowering a load of cases received signals by an employee of the stevedore. The plaintiff was struck by a load of cases of oil which was unexpectedly lowered into the hold where the plaintiff was working. The negligence consisted in lowering the load of cases before receiving a signal. The crucial question presented was whether the winchman, at the time the plaintiff was injured, was the servant of the oil company or of the stevedore. In the trial court it was found that the winchman remained the servant of the oil company, and the verdict and judgment were upheld on appeal. It was insisted by the defendant that since the winchman was engaged in work essential to the performance of the stevedore's contract to load the vessel, he was necessarily under the direction and control of the stevedore rather than the oil company, and particularly so since the winchman was operating under specific signals given him by an employee of the stevedore. However, in answer to this contention, Mr. Justice Moody, speaking for the Court, said in part: "Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary co-operation * * *. The giving of the signals under the circumstances of this case was not the giving of orders, but of information; and the obedience to those signals showed co-operation rather than subordination, and it is not enough to show that there has been a change of masters."
The case of Driscoll v. Towle, supra, 181 Mass. 416, 63 N.E. 922, is also an early leading case which illustrates the distinction between authoritative control over a servant and merely pointing out to him the work to be performed. In the Driscoll case the defendant was engaged in a general teaming business. He furnished a horse, wagon, and driver to the Boston Electric Light Company. The driver, who was paid by the defendant, reported each morning to the light company and received directions from an employee of that company about what to do and where to go, but at night returned the horse and wagon to the defendant's stable. While traveling to carry out an order received from the light company, the driver negligently injured the plaintiff, who brought an action against the owner to recover damages, alleging that the driver was the owner's servant. It was held that there was evidence which would *232 warrant the jury in finding that the driver continued to be the defendant's servant. There, the fact that the driver had "exclusive management of the horse" seems to have been the determinative factor. Holmes, C. J., speaking for the Massachusetts Court, said in part: "But the mere fact that a servant is sent to do work pointed out to him by a person who has made a bargain with his master does not make him that person's servant. More than that is necessary to take him out of the relation established by the only contract which he has made and to make him a voluntary subject of a new sovereign,as the master sometimes was called in the old books."
Factually distinguishable are the decisions of this Court cited by the defendants. Liverman v. Cline, 212 N.C. 43, 192 S.E. 849; Shapiro v. Winston-Salem, 212 N.C. 751, 194 S.E. 479; and Wadford v. Gregory Chandler Co., 213 N.C. 802, 196 S.E. 815. More nearly in point is the decision in Leonard v. Tatum & Dalton Transfer Co., supra, 218 N.C. 667, 12 S.E.2d 729.
The fact that Hodge expressly requested McGuire to send Haley with the bulldozer was a circumstance for the jury to consider as bearing on the question of who had the right of control over Haley. But it may not be treated as controlling or decisive on the question of nonsuit. Joslin v. Grand Rapids Ice Co., 50 Mich. 516, 15 N.W. 887.
The defendants emphasize their contention that the contractual arrangement between McGuire and Hodge contemplated that the bulldozer should be used only for ordinary land-clearing operations, and that when this work was completed and the operator moved to the house and began removing the trees from the yard as requested by Hodge, the operator then became for all intents and purposes the servant of Hodge in the performance of this particular work, which the defendants insist was out of and beyond the scope of Haley's general employment with McGuire. We have considered this contention with care. While it may be conceded there was evidence sufficient to have sustained a jury-finding in support of the defendants' contention, nevertheless, on this record, it also appears there was ample evidence to sustain the jury in finding that in removing the trees from the yard Haley continued to be the servant of McGuire. Of controlling importance as bearing on this phase of the case is the evidence showing (1) that when McGuire's manager sent Haley to the Hodge premises, he told him "to go out there and clear the land and do anything that Mr. Hodge wanted him to do"; (2) that in response to Haley's phone message, McGuire sent one of his foremen with a crane to the Hodge premises and removed the tree from the house; and (3) that thereafter Haley resumed work in the yard and removed another tree. This evidence, we think, when considered with the rest of the relevant circumstances in the case, was sufficient to take the case to the jury and support the inference that Haley in removing the trees from the yard was acting within the scope of his authority as employee of McGuire. 57 C.J.S., Master and Servant, §§ 563 and 570; Restatement of the Law, Agency, Sections 228 and 229. See also: Bruce v. O'Neal Flying Service, 231 N.C. 181, at page 185, 56 S.E.2d 560, 12 A.L.R.2d 647; Cole v. Atlantic Coast Line R. Co., 211 N.C. 591, 191 S.E. 353; Adams v. Foy, 176 N.C. 695, 97 S.E. 210; Peters v. United Studios, supra.
It thus appears that the court below properly submitted the case to the jury. The defendants have had their day in court, not only upon the controverted issue of whether Haley was McGuire's servant in respect to the removal of the trees from the yard, but also on the issue of whether Hodge was contributorily negligent. The jury answered both issues contrary to the defendants' theories of the case in a trial in which we find
No error.